LAMDEN *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY
and
ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* PRIBBLE.

Opinion delivered November 9, 1914.

1.  WITNESSES—INFANTS—COMPETENCY.—In civil cases infants under the age of ten years, and over that age if incapable of understanding the obligation of an oath, are incompetent witnesses. Kirby's Digest, § 3095.

2.  WITNESSES—INFANTS—COMPTENCY.—DISCRETION OF TRIAL JUDGE.— The question of the competency of an infant over ten years of age, as a witness, is within the legal discretion of the trial judge, and in the absence of a manifest error or a clear abuse, its judicial discretion is not reviewable.

3.  CARRIERS—INJURY TO PASSENGERS—NEGLIGENCE—PRESUMPTION.—Upon a showing that a train was wrecked and the coach in which plaintiff was riding as a passenger was overturned, in the absence of any explanation of the cause of the accident, a *prima facie* case of negligence on the part of the carrier is made out.

4.  RELEASE—BURDEN OF PROOF—RAILROADS.—Where a passenger executed a release, relieving a railroad company from liability for damages due to negligence, the burden is upon the passenger to show that the release was executed or procured under such circumstances as would relieve him from the binding force of the instrument.

5.  RELEASE—CAPACITY TO CONTRACT—RATIFICATION.—Although a passenger injured by the negligence of a railroad company, executes

a release of the company, for a consideration, and who at the time did not have capacity to contract, the passenger may at a later date, by words and acts ratify the contract of release.

6. RAILROADS—INJURY TO PASSENGER—DAMAGES—EARNING CAPACITY.— An instruction submitting the issue of plaintiff's impaired earning capacity as an element of damage, will not be held prejudicial, where the verdict shows, that the jury did not consider that issue.

7. RAILROADS—INJURY TO PASSENGER—DAMAGES—FRIGHT.—Compensation for fright, as well as for pain and suffering may be allowed to plaintiffs who were little girls, and who were injured in a wreck, when the car in which they were riding was overturned into a ditch, and they were dragged from the car through the windows.

Appeal from Cleveland Circuit Court; *Henry W. Wells,* Judge; affirmed.

STATEMENT BY THE COURT.

Mrs. Zella Crutchfield brought suit for damages for personal injuries received in a wreck of appellant's passenger train, upon which she was a passenger, in April, 1913, and the railroad company admitted she was a passenger; denied that its negligence caused the wreck and injury; that she was injured as claimed; and set up, as a further defense a full release, signed by Zella Lawson, who, it alleged, was Zella Crutchfield. Mrs. Zella Crutchfield died in July, 1913, and the suit was revived in the name of her administrator; the complaint was then amended to allege that she suffered pain and anguish from the injuries received to the time of her death; and that she lost several dollars in money in the wreck; and that she was deceived and imposed upon by the claim agent, and induced to sign the release for $50, under the belief that it was only in settlement for the money lost, and not for her claim for damages; that she was not capable of contracting at the time of the execution of the release, which it was alleged was fraudulently obtained. The amended answer admits that deceased was a passenger upon the wrecked train; denied that she was injured by the negligence of the railway company, all the other material allegations of the complaint, and plead the release in bar as in the first answer.

The mother first filed suits for damages for each of the children, Mabel and Lucile, as next friend, and upon her death the guardian was substituted, and the causes proceeded. The three cases were consolidated and tried together.

Mrs. Zella Crutchfield and her two little daughters, Mabel and Lucile Lawson, were passengers on appellant's train in April, 1913, which was wrecked near Eagle Mills, the coach in which they were riding was derailed, and rolled down the embankment, and into the water, which was waist deep in the coach to the smaller girl. The passengers were very much frightened, and the mother and two little girls had to be taken out of the windows feet foremost, by the other passengers, some pushing them out from below, while others on top of the side of the coach pulled from above. Ed Harper, who was also a passenger on the train, stated:

"The car was derailed and the local chair car lay on its side at the foot of an embankment five or six feet, in the water. I helped remove the passengers from under the car. I helped to take them all out. The car was turned over, and we shoved them through. Some pushed them out, and some took them from above. We could hardly get them out. There was a lady and three or four children. I didn't know who she was, and did not make inquiry. They were shoved out feet foremost. I don't know anything about the injury. Didn't have time to notice. There were a number of persons injured there, injured and bloody. The woman was scared to death. I did not know her."

The testimony tends to show that Mrs. Zella Crutchfield was considerably bruised and injured in the wreck. The doctor said she had a slightly fractured rib, which he plastered, and it didn't require further treatment; that her injuries were all on her left side, and she was up when he called and limped about two or three days; that the injuries were not such as to cause a great deal of mental anguish.

There was other testimony, tending to show that her injuries were much more severe. Another physician saw her on the 17th, and found her almost prostrated and suffering a great deal, and nearly unconscious, complaining of her arm, and how it hurt. This physician said he visited her six times, and her attendants told him she complained continually.

The older girl was bruised on the side of the head, her face and ear being bloody, and the smaller girl was scratched and cut about the knee on the under side. No physician attended either of them. One, who called on the mother, stated he noticed some slight bruises on the side of the head of one of the children, but that they were playing about, and that he did not treat them, and was not asked to do so.

The uncle of the children, who took them after the mother's death, said that the older girl had become hard of hearing in the ear on the side of the face that was bruised in the wreck, since that time, and had had a good deal of trouble with her eyes at school, and had not had any trouble of the kind before the injury. A physician stated that a bruise on the side of the head in the region where the testimony indicated this to have been, would tend to produce deafness. The uncle, also, said that the scar and cut was noticeable on the leg of the younger girl when she came to his home some considerable time after the wreck. Other testimony tended to show that the girls were little injured.

Another witness, who helped remove them from the car, in answer to the question, if he saw the little girls on the train, said:

"Yes, sir; I know and recognize them. I saw them take them and a woman out from under the car. The children and the mother were going on terribly. They were hollering and screaming at the top of their voices. I don't know the extent of their injury. A number were injured there. They were taken through the window. The coach was turned over in mud and water."

A good deal of testimony was introduced relative to the extent of the injuries to Mrs. Crutchfield, who was shown to be the same person as Zella Lawson, and went by that name, and also as to her condition at the time of signing the release, and the manner of its being obtained.

The testimony shows that she did sign the following release shortly after the arrival of the train on which the passengers were taken from the wreck to Pine Bluff, while in the waiting room, in the presence only of the claim agent and the children:

"GENERAL RELEASE.

"Whereas, I, Zella Lawson, of the county of Grant (Sheridan), State of Arkansas, was injured at or near Eagle Mills, Ark., about the 15th day of April, 1913, on a line of the railway owned or operated by the St. Louis Southwestern Railway Company (hereinafter called the railway company), while a passenger on train No. 2 in wreck. Left leg bruised and chest bruised and sprained. Lost $12.50 in cash, under circumstances which I claim render the railway company liable in damages, although such liability is denied by the railway company, and the undersigned being desirous to compromise, adjust and settle the entire matter:

"Now, therefore, for the sole and only consideration of the sum of fifty dollars ($50.00), to me this day paid by the St. Louis Southwestern Railway Company, the receipt of which is hereby acknowledged, in behalf of itself and other companies over whose lines its trains are run, or any other railway companies causing, or in any manner contributing to said accident and injury, I do hereby compromise said claim and do release and forever discharge the said St. Louis Southwestern Railway Company, and all companies over whose lines its trains are run, or any other railway company causing or in any manner contributing to said accident and injury, their agents and employees, from any and all liability for all claims, for all injuries including those that may hereafter develop, as well as those now apparent, and also do release

and discharge them of all suits, actions, causes of actions and claims for injuries and damages, which I have or might have arising out of the injuries above referred to, either to my person or property, and do hereby accept said sum in full, final and complete settlement and satisfaction for all damages of every kind and character growing out of or in any way connected with the said accident.

"I further represent and covenant that at the time of receiving said payment and signing and sealing this release I am of lawful age and legally competent to execute it and that before signing and sealing it, I have informed myself of its contents and executed it with full knowledge thereof.

"Given under my hand and seal this 15th day of April, A. D. 1913.

(Signed) "Zella Lawson.

"In presence of A. S. Madding."

It shows also that the claim agent delivered to her a draft on the treasurer of the company for $50, in payment, in accordance with the terms of the release, and that she collected the money thereon and kept it. She took the draft to her bank to have it cashed, and the cashier, Phillip Johnson, testified that Zella Lawson was the same person who went by the name of Zella Crutchfield, and:

"Tell the jury what occurred between you and her when she presented the draft."

A. I asked Mrs. Lawson, through curiosity, what it was. I read the draft, and she told me she was in a wreck on the Cotton Belt railway, and I told her if she signed this draft, she would have no case against the Cotton Belt for injuries at all.

Q. Did you read the draft to her?

A. Yes, sir; and told her, also, that I wouldn't sign it.

Q. What did she say?

A. She said that she would sign it; she also said that she was frightened a right smart in the wreck, and didn't get hurt much.

Q.   What did she say about the amount, $50?

A.   She said that was sufficient.

Q.   She said she wasn't hurt much, but excited?

A.   Yes, sir.

Q.   Was that draft paid?'

A.   Yes, sir; it was deposited and paid, and the next day afterward, she drew out $30.

Q.   Was she in a normal condition?

A.   Yes, sir.

Q.   Did she complain of any injury?

A.   No, sir.

Q.   You explained to her at the time that that was a full and complete settlement of all injuries that she might have sustained?

A.   Yes, sir.

Q.   What did she say as to understanding it?

A.   She wanted the money.

Mrs. Lawson died, after giving birth to a child in June, after the wreck in April.

The court directed a verdict for the defendant in the suit of the administrator, and from the judgment the administrator appealed.

The jury returned verdicts for damages for the older girl, Mabel, in the sum of $500, and the younger, Lucile, in the sum of $250, and from the judgments the railway company appealed.

*D. D. Glover,* for appellant, Lamden.

1.   Upon proof of the injury to Mrs. Crutchfield, a *prima facie* case of negligence was made out against the railway company. Kirby's Dig., § 6775; 65 Ark. 238; 63 Ark. 638; 70 Ark. 481; 57 Ark. 418; 73 Ark. 548; 90 Ark. 485.

2.   Before a contract of the nature of the release offered in this case can be enforced, the parties thereto must, at the time of its execution, have been on an equal footing, and a corporation will not be allowed to relieve itself from liability for negligence which has caused injury, by taking an undue advantage of a person who, at

the time of the execution of the writing, was not in a mental condition to act with judgment and intelligence in relation to the matter. Sharp practice, circumvention, misrepresentation and fraud, to overreach a poor, illiterate woman, as in this case, ought not to be tolerated. 62 Ark. 112; 73 Ark. 42; 103 Ark. 344.

3. In determining whether or not the trial court was correct in directing a verdict against the administrator, it is proper for this court to take that view of the evidence which is most favorable to the cause of the deceased; and if there is any evidence in favor of said plaintiff, which will legally sustain a verdict, it was error to take the case from the jury. 33 Ark. 370; 39 Ark. 491; 105 Ark. 136; 104 Ark. 267; 96 Ark. 394; 103 Ark. 401; *Id.* 221; 95 Ark. 560; 93 Ark. 191; 91 Ark. 337.

4. We think the witness, Mabel Lawson, showed sufficient intelligence and comprehension of the sanctity of an oath to be entitled to testify, and the court erred in excluding her. Shumaker & Langsdorf, Law Dict. "Oath;" Webster's Dict. "Oath;" Kirby's Digest, § 3095; 93 Ark. 156.

*S. H. West* and *Bridges & Wooldridge,* for appellee in the suit of Lamden, Administrator.

1. The question of a *prima facie* case of negligence against the railway company does not enter into this branch of the case. Mrs. Crutchfield signed and executed a full and complete release for a consideration of fifty dollars to her paid and by her accepted.

Fraud in the procurement of the release will not be presumed. The burden of proving it rests upon the plaintiff pleading it. 92 Ark. 509-517; 99 Ark. 45; 14 Ark. 79; 107 Ark. 202-221. See, also, 85 Ark. 592; 102 Ark. 616-620.

2. The examination of the child, Mabel Lawson, on her *voir dire,* clearly established the fact that she was not competent to testify. There was no showing that the witness was possessed of "sufficient natural intelligence," or appeared "to have been so instructed as to

comprehend the nature and effect of an oath." 25 Ark. 92; 93 Ark. 153; 159 U. S. 523.

*S. H. West* and *Bridges & Wooldridge,* for appellant in the case of the guardian.

1. Instruction 4, given by the court was abstract in authorizing the jury in assessing damages, to consider the impaired earning capacity of the children to earn money, if such resulted from the injuries complained of. There was an entire want of testimony upon which to base such an instruction. 37 Ark. 593; 36 Ark. 242; 41 Ark. 382; 42 Ark. 57; 24 Ark. 251; 23 Ark. 289; 16 Ark. 651; 58 Ark. 198-205; 63 Ark. 387-394; 90 Ark. 278-284.

2. The verdicts are excessive. The injuries received by the children were slight and inconsequential as appears by the testimony, and the testimony of the guardian as to defective hearing and eyesight of one of the girls wholly fails to connect that condition with injuries sustained in the accident. 89 Ark. 9-18; 102 Ark. 499-506; 88 Ark. 12; 90 Ark. 64.

*D. D. Glover,* for appellee guardian.

KIRBY, J., (after stating the facts). Appellant, administrator, contends that the court erred in declaring Mabel Lawson an incompetent witness, and in directing a verdict in favor of the railway company.

When Mabel Lawson, twelve years of age, was offered as a witness, she was first examined by the attorneys and then by the court, and again examined by the attorneys and the court, and, not appearing to understand the obligation of an oath, held incompetent to testify.

(1) In civil cases infants under the age of ten years, and over that age, if incapable of understanding the obligation of an oath, are not competent witnesses. Kirby's Digest, § 3095.

In criminal cases, it appears from the authorities, that all persons at the age of fourteen years are presumed to have common discretion and understanding sufficient to testify until the contrary appears; but under that age,

there is no presumption of capacity and inquiry will be made on that point. *Crosby* v. *State*, 93 Ark. 158.

(2)   Under the statute infants under ten years of age are conclusively presumed incompetent to testify in civil cases. Over that age, they are incompetent only if incapable of understanding the obligation of an oath, the presumption being that they are, unless and until the contrary appears. The question of their incompetency is in all cases necessarily left to the legal discretion of the trial court, and in the absence of manifest error or a clear abuse, its judicial discretion is not reviewable.

After carefully reviewing the examination of the excluded witness, which it is not necessary to set out here, we are of the opinion that a clear abuse of the trial court's discretion in declaring her incompetent does not appear, and no error was committed in excluding the witness.

(3)   The negligence of the railway company is established, and a *prima facie* case made, of liability for damages for the injuries received, upon the showing that its train, upon which Mrs. Zella Crutchfield, and her two daughters, Mabel and Lucile, were passengers, was wrecked, and the coach in which they were riding overturned, without any explanation of the cause thereof. *Railway* v. *Mitchell*, 57 Ark. 418; *Barringer* v. *St. Louis, I. M. & S. Ry. Co.*, 73 Ark. 548; *Miles* v. *St. Louis, I. M. & S. Ry. Co.*, 90 Ark. 485.

Its liability for damages to Mrs. Crutchfield for the injuries received in the wreck was conceded in the trial, and it plead, in bar of her right to recover, a settlement of her cause and a release of the company from all liability for damages, for the amount stipulated and paid in satisfaction.

(4)   Appellant attempted to avoid the effect of the release by showing it was obtained when her condition was such that she was not competent to contract, and because of misrepresentations, amounting to fraud, in its procurement. The burden of proof was upon him to show that the release was executed or procured under

such circumstances as would relieve his deceased from the binding force of the instrument shown to have been executed by her. *St. Louis, I. M. & S. Ry. Co.* v. *Morgan*, 107 Ark. 202.

Several witnesses testified to the appearance and condition of Mrs. Crutchfield after the wreck, and shortly prior to the time and immediately after the execution of the release and this testimony alone would be sufficient to raise a question as to her capacity to contract at the time of its execution; but the testimony shows that she took the draft for $50 given in payment for her release of all claims against the company, and later deposited it with the Grant County Bank, with which she had been doing business for six or eight months, for collection. The cashier stated that he could not remember that any one was in the bank with her, that there was nothing abnormal about her condition when she presented the draft, and that after reading it, and not having heard of the wreck, he asked, through curiosity, what it was; that she told him she had been in a wreck on the Cotton Belt Railway, and was told by him if she signed the draft she would have no case against the railroad for injuries at all, and advised her not to sign it. She said that she would sign it, and did so, that although "she was frightened a right smart in the wreck, she didn't get much hurt, and that the amount was sufficient for her injuries."

The draft was deposited and collected by the bank through its Little Rock correspondent, and the next day afterward she drew out $30 of it, and drew a few other checks against her account later on.

(5) Even though the circumstances attending the execution of the release, and the condition of the deceased at the time she signed it, raised a question as to her capacity to make a binding contract, she later, the undisputed testimony shows, under normal conditions, cashed the draft, given in payment for the release, and after the cashier of her bank had explained to her that if she did cash it, it would be a full settlement, and she would have no case whatever against the railroad com-

pany for injuries received, her action in so doing, with full knowledge of its effect, was an effectual ratification of the contract of release, and discharged the railroad company from all liability for the injuries received by her, in accordance with its terms, and no error was committed in directing the verdict. *St. Louis, I. M. & S. Ry. Co.* v. *Campbell,* 85 Ark. 592; *Francis* v. *St. Louis, I. M. & S. Ry. Co.,* 102 Ark. 619; *K. C. Sou. Ry. Co.* v. *Armstrong,* 115 Ark. 123.

In the cases of the minors, the appellant, railway company, contends that the court erred in its instruction No. 4, given to the jury, relating to the measure of damages, and also that the verdicts are excessive. The instruction complained of reads:

"The court instructs the jury that if you find for the plaintiffs, you will assess their damages at a sum, from the evidence, which will fairly compensate them for all pain and suffering, both mental and physical, endured by them, if you find that any such resulted from the injuries complained of; also for their impaired capacity to earn money, if any such resulted from such injury, from the date of plaintiff's injury to the present time and for the future of her life."

It is insisted that this instruction is abstract, in permitting the consideration of impaired earning capacity, when there was no testimony introduced, tending to show it.

(6) It is true there was no testimony introduced relative to the earning capacity of Mabel Lawson, but the testimony tends to show that her hearing in the left ear was permanently impaired, and one of her eyes weakened, because of the injury, and the jury might have inferred from that sufficient impairment of earning capacity to prevent the instruction being abstract in her case. In Lucile's case a specific objection would doubtless have remedied it, and it was not prejudicial in any event, as is evident from the award of $250 damages.

The girls were terribly frightened by the overturning of the coach, its rolling down the embankment and

into the cold water waist deep to the smaller one. They were handed or dragged through the windows feet foremost. The older one, Mabel, was shown to have received a serious bruise and injury to the left side of her head and ear from which the testimony tended to show the hearing in that ear was permanently impaired, and the sight of the eye also weakened. The little girl, in addition to the minor scratches and bruises, had a cut upon the leg near the knee, which left a permanent scar.

(7) Unquestionably they suffered greatly from the terrible fright, in addition to the pain from their physical injuries, and were entitled to compensation, as well on that account. *St. Louis, I. M. & S. Ry. Co.* v. *Brown,* 97 Ark. 505.

Under these circumstances, we can not say that the verdict of the jury, allowing $500 damages for the injuries to the older girl, and $250 for the injuries to the younger, was excessive.

The judgments in all three cases are affirmed.