## Arkansas Zinc & Smelting Corporation *v.* Silver Hollow Mining Company.

### Opinion delivered May 9, 1921.

1. Accord and satisfaction—acceptance of check in full settlement.—Where a claim is in dispute, and the debtor sends to the creditor a check or other remittance which he clearly states is a full payment of the claim, and the creditor accepts the remittance or collects the amount of the check, without objection, this constitutes a good accord and satisfaction.

2. Accord and satisfaction — evidence.—Letters exchanged between the parties relative to a change in the computation of the purchase price of the ore, which change was never consummated, do not establish that the acceptance of checks purporting to be in full settlement of claims was merely a tentative settlement pending final agreement.

Appeal from Marion Chancery Court; *B. F. McMahan,* Chancellor; reversed.

*Daily & Woods* and *J. H. Black,* for appellant.

According to the character of the ore shipped, the schedule of prices provided in sections 9 and 10 of the contract governed, and the payments made on each shipment were calculated on the correct basis, and there was an accord and satisfaction. The checks sent in payment were received and cashed.

Where there is any ambiguity in the contract, then the parties are bound by the construction which they themselves have placed upon it. 134 Ark. 542; 104 *Id.* 474; 98 *Id.* 425; 95 *Id.* 454; 46 *Id.* 131; 55 *Id.* 417; 52 *Id.* 73; 88 *Id.* 363.

Plaintiff received settlement sheets and received and cashed the checks in settlement, and this constituted an accord and settlement, and there was nothing due appellee, and the cause should be reversed and dismissed, as there was accord and satisfaction. 1 C. J., pp. 563-4, § 87; 94 Ark. 158; 98 *Id.* 269; 100 *Id.* 251.

*J. C. Floyd* and *Williams & Seawell,* for appellee.

If the contract is ambiguous and susceptible of more than one construction, it is the duty of the court to place that construction on it most favorable to appellee, as appellant prepared the contract. 74 Ark. 41; 84 *Id.* 431; 105 *Id.* 518; 112 *Id.* 1; 174 S. W. 136. Under these authorities the court properly construed the contract and held that appellee was entitled to settlement under the schedule in paragraph 14. Appellee is not estopped, and the contention is without merit. From the letters it appears there was no compromise or accord. 99 Ark. 260; 91 *Id.* 141. The evidence sustains the finding of the chancellor on every question involved, and should not be disturbed. 96 Ark. 434; 95 *Id.* 523.

HUMPHREYS, J.   Appellee instituted suit against appellant in the Marion Chancery Court to recover $2,-999.99 for an alleged balance due it on account of ship-

ments of zinc silicates and zinc sulphides under contract entered into between appellant and appellee on the 21st day of June, 1916. It was alleged that the payments made upon each shipment were erroneously calculated under the basis provided in sections 9 and 10 of the contract, instead of the basis provided in section 14 thereof; that the account between the parties is complicated, and that a correct accounting between them will require the aid of a master.

Appellant interposed two defenses, the first being that, according to the character of the ore shipped, the schedule of prices provided in sections 9 and 10 of the contract governed, and that the payments made on each shipment were calculated on the correct basis; the second being an accord and satisfaction.

The court found that, in ascertaining the correct amount due on each shipment, section 14 of the contract controlled, and that the amounts should have been calculated on a sliding scale, based upon an assay of sixty per cent. metallic contents of zinc sulphides and forty per cent. of zinc silicates, and, in accordance with the finding, entered a decree in favor of appellee for $1,662. From that decree an appeal has been duly prosecuted to this court, and the cause is here for trial *de novo.*

The contract in question was entered into between the parties on the 21st day of June, 1916. It provided for the purchase by appellant from appellee of 300 tons of zinc silicates per month and 700 tons of zinc sulphides per month, covering a period of three years. The contract contained apparently conflicting paragraphs for ascertaining the amounts to be paid for the ore—sections 9 and 10 provided for one basis to deduct smelting charges, and section 14 providing another. Something like fifty-six shipments were made by appellee from its mine at Rush to appellant's smelting plant near Van Buren, covering a period of about ten months. Upon the receipt of each shipment appellant made an assay of the ore and calculated the value of the shipment on the basis provided in section 9, if zinc silicates, and section 10, if zinc sul-

phides, and, in keeping with the assay and the calculations, made out a settlement sheet which it immediately mailed to appellee.   Immediately thereafter appellant sent a check for the balance due appellee on the shipment, accompanied by a voucher reciting that the check was in full payment of the shipment.   It appeared on each check sent appellee after January, 1917, that it was in full payment.   Appellee retained and cashed each check. Each settlement sheet sent appellee by appellant disclosed the gross weight of each car, the per cent. of moisture therein, the net weight, the zinc contents, the total value, the amount which had been advanced on the car, the freight charges, the smelting charges, the net value thereof, the assay and the basis upon which the settlement had been calculated, as well as the character of the ore contained in the shipment.   It is disclosed in the record that other mining companies in the Rush district shipped ore to appellant under appellee's contract heretofore referred to.   The Edith Mining Company, in charge of a Mr. Hirschler, shipped ore in this way.   E. E. Schofield had charge of appellee's affairs.   F. W. Bocking was one of the representatives of appellant's affairs.   Schofield and Hirschler visited appellant's smelting plant, and, while there, had under discussion the question as to whether the price of ore shipped should be calculated on the basis provided in sections 9 and 10 or 14 of the contract.   There is a conflict in the evidence as to the basis determined upon in that interview.   On December 6 thereafter Bocking, representing appellant, wired appellee as follows:   "We will not accept Edith (referring to ore shipped from the Edith mine) unless settled for under schedule as we have settled with you in the past. Please have definite understanding before shipping." Hirschler, representing the Edith Mining Company, replied to the wire as follows:   "Your wire received. Thought my letter December 3 was clear.   We fully understand that all shipments arranged for since my visit Van Buren are subject to charges mentioned in first part of contract and not as set out in schedule."   Hirschler's

wire was confirmed by a letter in part as follows: "We agree to the charges as set out in the first part of the contract, and not to those claimed by us on the strength of the second schedule, for all shipments made and arranged for after Mr. Hirschler's visit to Van Buren, as to the previous shipments this matter has been referred to New York, and left to them to settle with your New York office." On the next day Schofield, representing appellee, wrote a letter to appellant, which, in part, is as follows: ";We received your telegram, and the Edith people were already answering your wire that they would accept the old treatment charge that you had charged them before, and said he thought he had written you to that effect; but at any rate his wire will clear everything. Nothing like bringing a gentleman of his weight and caliber to his milk. You certainly have done the work properly." Concerning the basis upon which the price of the ore should be ascertained, Mr. Schofield testified as follows: "I took it up with them when I was in their office in Van Buren, and also when Mr. Bocking came to Rush, and I wrote him several letters about it." The record contains several letters written by appellant to appellee in relation to the two schedules contained in the contract, which, in part, are as follows:

"December 16, 1916.

"When you were here last, we talked the matter over in relation to the two schedules in our contract, and we both agreed that they were conflicting in many ways, and you suggested that we discard the first schedule and abide by the last schedule as written you by Mr. Hothorn on May 31," etc.

"December 29, 1916.

"I expect in the near future to be in your district, and will then be glad to take up all matters with you pertaining to the change in the treatment charges on your ore as well as other matters," etc.

"March 31, 1917.

"Under date of the 20th, I sent you several copies of an understanding relative to the two schedules in our

contract, two of which I ask you to sign and return and retain one copy, but up to the present time I have not even received a reply, and I believe it is due us to at least have a reply of some kind stating what you wish to do.'' This last letter was written about the time the last shipment was made under the contract.

We deem it unnecessary to set out the evidence responsive to the issue joined in the pleadings as to whether the paragraphs governing the basis upon which the price of the ore should be calculated are in conflict, and, if so, which paragraph should govern, as the issue of an accord and satisfaction tendered by appellant as a defense is sustained by the undisputed facts in the case. If it be conceded, as contended by appellee, that the basis upon which the price of the shipments should be determined was in dispute between the parties, the case is ruled by the doctrine announced in *Longstreth* v. *Halter,* 122 Ark. 212, which is as follows: ''When a claim is in dispute and the debtor sends to the creditor a check or other remittance which he clearly states is a full payment of the claim, and the creditor accepts the remittance or collects the amount of the check, without objection, this constitutes a good accord and satisfaction.'' Each settlement sheet shows on its face that it was intended by appellant as an account stated concerning the particular shipment, and disclosed the basis upon which the net amount due appellee was calculated. The balance due appellee, as shown by the settlement sheet, was covered by a check and voucher showing the check to be in full settlement of the shipment. The check was received and cashed in each instance by appellee. While there is evidence tending to show that there were conflicting paragraphs in the contract in relation to the method by which to ascertain the price for the ore, and that there was some discussion as to which should govern in fixing the price, it is perfectly clear that the price on each shipment was calculated upon the basis provided in either sections 9 or 10 of the contract with the full knowledge of both parties, and the payment was made and accepted in full settle-

ment on that basis. We can not follow appellee's suggestion that appellant's letters of date December 16 and 29, 1916, and March 31, 1917, show that the settlements were tentative, pending a final compromise as to which schedule should control. Appellee's own letter of December 7, 1916, in answer to a telegram sent to appellee by appellant on December 6, would conflict with the construction appellee places upon appellant's letters. Appellant's letters relate to a contemplated change in the treatment of the ore, if an agreement between the parties could be reached to that effect. The change appellant had in mind was incorporated in writing and enclosed to appellee on the 20th of March, 1917. The proposed written changes did not meet the approval of Schofield, and he destroyed them. We think there is nothing in appellant's letters to the effect that the settlements made from time to time were tentative and subject to a future agreement. Each settlement covered by a check for balance due, which was accepted and cashed by appellee, constituted an accord and satisfaction. The bills should have been dismissed.

The decree is therefore reversed, and the cause dismissed.