SQUIRES *v.* BEAUMONT.

5-2385                                                        345 S. W. 2d 465

Opinion delivered April 24, 1961.

*Fred A. Newth, Jr.,* for appellant.

*Charles A. Brown,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant and appellee were associated for some time in the construction business, and constructed a number of buildings. In general, W. E. Beaumont, Jr., appellee, negotiated for the business, acted as the contractor, and appellant, Elmer A. Squires, would do the actual construction work. From their last venture, comes this litigation. Appel-

lee was contacted by the owners of the Zimmerman Nursing Home in Carlisle, and asked to prepare construction plans for enlarging the building, and have same approved by the State Board of Health; he was further requested to make an effort to get a loan from the Small Business Administration. An application was made on behalf of the Zimmerman's, but the loan was declined, because the biggest part of the Zimmerman collateral was a rice farm, and the SBA required that the farm be disposed of, and the money obtained invested, before the loan would be approved. Carl Kittler, who lived near Stuttgart, agreed to buy the farm, and orally contracted with the parties hereto for additional work on the farm house at a cost of $1,700. The farm was deeded to Beaumont and Squires jointly; they, in turn, deeded it to Kittler, and the latter, after making part payment in cash, became indebted to these parties in the amount of $5,700.00, for which a mortgage and note were given. Likewise, several judgments, totaling $2,534, on the Zimmerman property were paid by Beaumont and Squires, each paying one-half, in order to obtain the loan from the SBA. As construction progressed, changes (from the original plans) were made in both the nursing building and the Kittler home. Following completion of the projects, Beaumont and Squires discussed settlement. There was a dispute about the amount due each, principally because of the changes that had been made, Squires contending that he was due more money, because of such changes. The parties met on December 8th, but could not agree; however, on December 10th, a Thursday, they again met and reached an agreement. Pursuant to the terms of their agreement, Beaumont endorsed the mortgage and note which the parties had received from Kittler, and turned same over to Squires; the latter, in turn, gave Beaumont his personal check for $2,000.00, and executed a release. According to appellee, appellant told him that he (Squires) did not have enough money to cover the check, and requested Beaumont to hold it until the following Monday.[1]

---

[1] Whether he requested Beaumont to hold the check until Monday was not mentioned by Squires in his testimony.

Appellee agreed to do so. The following day (Friday), the Kittlers paid off the mortgage and note, in the amount of $5,933.50 (including interest); however, on advice of their attorney, the check was made payable to Squires and Beaumont jointly. Squires took the check to Beaumont's home, and had it endorsed by appellee. The following day (Saturday), Beaumont, by telephone, verified his signature to the bank at Carlisle, and Squires cashed the check. Beaumont presented the $2,000.00 check, given him by Squires, to the First National Bank of Little Rock on Monday, but was advised that payment had been stopped on the check. On contacting appellant, appellee was told that payment had been stopped because the amount of the settlement was incorrect. Beaumont instituted suit for the $2,000.00, and Squires answered and filed a cross-complaint, alleging Beaumont was still indebted to him in the amount of $5,075.62. The case came on for trial, and at the conclusion of the testimony, appellee moved for a directed verdict. This motion was granted by the Court, and verdict returned for Beaumont in the amount of $2,000.00.[2] From such judgment, comes this appeal.

The transactions between the parties appear to total more than $45,000. The following are undisputed: Beaumont promised to pay to Squires $41,800 for the Zimmerman Nursing Home construction; $40,000 was paid before the settlement. Appellee promised to pay to appellant $1,700 for the Kittler home construction, and paid this amount before the settlement. Squires paid $1,267 toward settlement of outstanding judgments on the Zimmerman property in order that the work could proceed. The dispute, as heretofore stated, centers over extra work done on both the Zimmerman and Kittler jobs, and over the ownership of the Kittler note. Since we are of the opinion that the release executed by appellant had the effect of settling the rights between the parties, it is deemed unnecessary to discuss the various

---

[2] Judgment was also entered against the First National Bank of Little Rock in this amount as garnishee, a garnishment having been obtained before judgment, and the bank having answered that it was holding $2,000.00 belonging to Squires.

phases of the controversy. Squires admitted that all of the changes made in the Zimmerman Nursing Home were discussed at the time of the settlement; also, that all changes made in the Kittler home were discussed at the same time. It would certainly seem that the ownership of the Kittler note was discussed, since the note was assigned by Beaumont to Squires at the time of the settlement. All records were available to both parties during the period of the discussions. There is no proof that appellant was defrauded, or misled by appellee; nor any evidence that Beaumont concealed information. The strongest evidence offered by Squires was that he had forgotten certain expenditures that he had made. Appellant testified that he awakened during the night after giving Beaumont the $2,000 check, and remembered that he had not been given credit for the amount that he had paid on the Zimmerman judgments. Admittedly, the thought of stopping the check occurred to him the same night. "I thought about it the night I gave it to him, then I dropped it from my mind." However, despite this fact, Squires said nothing to appellee, but instead, received the check from the Kittlers, obtained the endorsement of Beaumont to same, and proceeded to cash it. According to his own testimony, therefore, he was aware of any alleged disparity in the settlement before cashing the check; nevertheless, he cashed same, and stopped payment on his own check to Beaumont.

Applying the general principles controlling this case, let it first be said that the law favors settlements and compromises. *Burke* v. *Downing Company,* 198 Ark. 405, 129 S. W. 2d 946.

Since the execution of the release is admitted by Squires, the burden is on appellant to prove facts sufficient to set aside such release. As was stated in *Lamden* v. *St. Louis S. W. Ry. Co.,* 115 Ark. 238, 170 S. W. 1001:

"Appellant attempted to avoid the effect of the release by showing it was obtained when her condition was such that she was not competent to contract, and because of misrepresentations, amounting to fraud, in

its procurement. The burden of proof was upon him to show that the release was executed or procured under such circumstances as would relieve his deceased from the binding force of the instrument shown to have been executed by her.''

We find no sufficient or substantial evidence that would justify setting aside the release, and it follows that the trial court was correct in directing a verdict for appellee. It might be added that even though the proof reflected that Squires was taken advantage of in the settlement, his cashing of the check would serve as a ratification. In *Minton* v. *Hall,* 218 Ark. 92, 234 S. W. 2d 515, this Court said:

''Assuming that the release had been procured as alleged by the appellee, his taking advantage of the settlement by depositing the check to his credit was a ratification of such release, for if he had been deceived he learned the truth and it was his duty to disaffirm the contract as quickly as reasonable diligence would allow, and, having failed to do so and deriving all possible benefit from the transaction, he cannot now be relieved as by his conduct he has waived all benefit of and relief from misrepresentations (cases cited).''

See also *Lamden* v. *St. Louis S. W. Ry. Co., supra.*

Appellant avers that he could not be bound under the theory of ratification, for he contends that the amount due him is in excess of what he received from the Kittler notes; *i. e.,* he would have been due that amount irrespective of the controversy. However, from an examination of the record, it appears that the only undisputed amounts are an $1,800 balance on the Zimmerman contract; $184.50 for a water fountain, and possibly a payment of $1,267 on the Zimmerman judgments.[3] All other phases were very much in dispute at the time the settlement was reached. The total of the undisputed items, as set out, does not equal the net amount received by Squires through the Kittler check.

---

[3] It is not clear whether Beaumont disputed this item.

Be that as it may, the litigation is determined by our finding in the preceding paragraph.

Affirmed.