ORVILLE WHITE ET AL *v.* TRAVELERS INDEMNITY
INSURANCE COMPANY

5-4942                                    444 S. W. 2d 242

Opinion delivered September 8, 1969

*Carl M. Harness,* for appellants.

*Crouch, Blair, Cypert & Waters,* for appellee.

JOHN A. FOGLEMAN, Justice. All of the appellants
in this case were engaged in the production of grapes
during the year 1967 and prior years. They appeal from
a decree denying them reformation of policies of insur-

ance issued by appellee on their 1967 crops. This decree also denied appellants any recovery over and above the amounts paid by appellee on their claims prior to the institution of the present action. While appellants urge five points for reversal, we find it necessary to discuss only one of them, in view of our finding that the appellants completely released appellee from any liability on their respective claims by accepting the amounts which appellee contended were due under the policies of insurance.

The policies were issued through Walker Brothers, Inc., an insurance agency representing Travelers Indemnity Insurance Company and approximately twelve other companies. This agency had obtained hail insurance policies for the appellees in prior years. The policies previously issued had not provided full coverage on the grape crops until the grapes had become one-eighth of an inch in diameter. Walker began providing coverage under the policies issued by appellee during the year of 1966. The following clauses were contained in the application for insurance:

> "Beginning 24 hours, except as may be provided in the policy, from the hour and date this application is last signed by both the applicant and the Company's Agent, the Company shall assume liability for loss by hail and additional perils, if any, named in the policy.

> \* \* \*

> The foregoing binder is subject to the representations and provisions of this application, to the conditions of the CHIAA Standard Crop-Hail Policy, and to the provisions of any endorsement attached thereto. A copy of this application, or abstract thereof, and of any endorsement shall be attached to the policy if issued by the Company and together with the policy shall constitute the insurance con-

tract; the original application will be on file with the Company.''

Attached to and constituting a part of both the appliction and the policy of insurance in each case, there was a sheet entitled ''TREE FRUITS, GRAPES, BUSH FRUITS AND BERRIES.'' Among the clauses set out on this sheet under the heading ''Special Provisions'' was the following, pertaining to grapes:

''It is a condition of this policy, if this application covers on grapes, not to exceed one-third of the amount of insurance applied for hereunder shall take effect prior to the time that 75% of the berries have attained a minimum size of $\frac{1}{8}$ inch in diameter The Company shall not be liable for loss or damage to buds, blooms, or blossoms in any event, nor for loss or damage to vines and leaves unless such loss to vines and leaves shall affect the product thereof, and then only to the extent that the product thereof has been affected. * * *''

The grape crops of all of the appellants suffered damage by hailstorm in the latter part of April 1967. Claude Brock, a field representative of a group of insurance companies insuring such risks, and A. G. Ackerman, an adjuster for the group, went to the damaged vineyards shortly after the loss occurred. The crops had not reached a stage of development which permitted any accurate estimate of the loss suffered at that time. At the time of the hail damage none of the grapes in any of the crops had attained the minimum size required for coverage in the face amount of the policies. On the occasion of this visit neither Brock nor Ackerman told any of the appellants that their coverage, under the circumstances, was limited to one-third of the amount of the insurance applied for. They did so advise Lowery Walker, the officer of the insurance agency who dealt with appellants.

Approximately one month after their first visit,

Brock and Ackerman returned and made an assessment of the damages to the crops of each of the appellants in amounts that seemed to have been satisfactory to each grower. After determining the amount of damages Brock and Ackerman filled out a form for proof of loss for each of the appellants. The proofs of loss prepared for signature by appellants contained the following paragraph:

"The Insured under above described policy hereby agrees to accept thereunder said amount claimed in full payment, compromise and satisfaction for loss and damage as aforesaid and further agrees that said amount covers in full all loss and damage sustained previous to this date. The Insured also declares that the statements contained herein are true and are made for the purpose of collecting a claim from the Company and that no attempt had been made to deceive the Company, either as to the amount of insurance carried, acreage, location, ownership of crops, or the amount or extent of the loss."

Each of the appellants declined to sign this proof of loss at first. Both Orville White and Vern White later talked with Walker. Thereafter each of them signed the proof of loss as prepared and submitted it to appellee. The basis of refusal for both of the Whites to sign the respective proofs of loss was their contention that they had bought 100% coverage while the proof of loss was based on only one-third of the damage. Robert E. Pianalto, Secretary-Treasurer of Pianalto-Pozza Farms, Inc., stated that he signed the proof of loss regarding the corporation's grape crop. He did not talk to Walker but got his policy out, read it and decided that the coverage might be only for one-third of the loss, contrary to his understanding. He said that he signed the proof of loss to avoid as much confusion as possible. Richard Pianalto, president of the corporation, testified that he accepted the adjustment because he was under the impression that there was no alternative, after he obtained advice from certain insurance agents and officers.

After receiving the proofs of loss in the latter part of June 1967, appellee mailed a draft to each of the appellants for the amount shown in the respective proofs, *i. e.*, one-third of the total damage to each. These drafts were accepted, endorsed and the proceeds collected by the respective appellants. On the reverse side of each draft, immediately above the place where they were endorsed, there appeared the following statement:

"ENDORSEMENT OF THIS DRAFT IS HEREBY MADE ACKNOWLEDGMENT OF FULL PAYMENT AND DISCHARGE OF ALL CLAIMS AND DEMANDS FOR LOSS AND DAMAGE UNDER THE POLICY OF INSURANCE AS SET FORTH ON THE FACE OF THIS DRAFT; IN CONSIDERATION WHEREOF THE SAID POLICY IS HEREBY REDUCED IN SAID AMOUNT."

On the face of each draft above the signature thereon and following the statement of the amount of the draft in words, appeared the following:

"BEING IN FULL SETTLEMENT OF ALL CLAIMS AGAINST THE ABOVE NAMED COMPANY FOR LOSS AND DAMAGE CAUSED BY HAIL OCCURRING 4/25 1967 INSURED UNDER CROP-HAIL POLICY NO. .......... 'ISSUED AT THE SPRINGDALE, ARKANSAS AGENCY. LOSS NO. ..........[1]"

Appellants seek to avoid the effect of the clear statements contained in the proof of loss and on the drafts on the basis that the amount tendered and accepted was in payment of a liquidated, undisputed claim arising under the contract and not out of any compromise or settlement between the parties. Thus, they contend, there was no consideration for the release claimed by appellee for the discharge of an additional and dis-

[1]The only variation in this statement was the policy and the agency loss numbers. (Footnote Ours.)

tinct amount or item of liability. They rely upon *DeSoto Life Insurance Company* v. *Jeffett,* 210 Ark. 371, 196 S. W. 2d 243. In that case the liability asserted against which the release was pleaded was an additional and distinct amount or item of liability. The amount paid for the release was the amount which the jury determined to be a liquidated and undisputed obligation of the insurance company under a clause providing for payment for partial disability. The claim there asserted was based upon a different clause providing for total disability. In its opinion the court recognized the general rule stated in *American Insurance Union* v. *Wilson,* 172 Ark. 841, 291 S. W. 417, where there is a bona fide dispute as to the amount due under an insurance contract, that the payment of a smaller sum in satisfaction of the entire claim is a sufficient consideration for the release of the balance of the amount claimed.

In the *Wilson* case, there was the same kind of dispute between the parties before the payment as existed here. That suit was brought to recover the difference between the face amount of a life insurance benefit certificate and the amount paid by the insurance company. The beneficiary claimed that the face amount of the original policy was not affected by a merger contract under which the insurance company appealing assumed liability upon insurance certificates issued by the other company. This contract provided that the appellant there should not be liable to the holders of benefit certificates in excess of an amount to be determined according to that contract. This was the amount tendered to and accepted by the beneficiary in full payment of all claims under the benefit certificate. The dispute there involved was whether the liability under the certificate was limited by the merger agreement because it had not been received by the insured and attached to his benefit certificate, thus never becoming a part thereof. It was held that there was an accord and satisfaction, even though the beneficiary wrote the company before cashing the check, that he would accept it as part

payment due on the policy. The court distinctly held that these circumstances did not involve a liquidated claim which could not be discharged by a payment of less than face value. We find the rule stated in that case to be applicable here. Even though the appellants agreed to and accepted the assessment of total damage by appellee's representatives, there was definitely a dispute as to the amount for which the company was liable under the terms of the insurance policy. Thus the claim cannot be said to have been for a liquidated amount.

Earlier we said that if the basis upon which a liability should be determined under a contract between the parties is in dispute, the case is governed by the rule that acceptance and collection of a check or other remittance clearly stated to be full payment of the claim, without objection, achieves an accord and satisfaction. *Arkansas Zinc and Smelting Corporation v. Silver Hollow Mining Company,* 148 Ark. 512, 230 S. W. 573. We see no significant difference in that case and this. A later case applying this principle is *Squires v. Beaumont,* 233 Ark. 489, 345 S. W. 2d 465.

Appellants also assert that reformation should have been granted because of inequitable and unconscionable conduct of appellee's representatives in failing to inform appellants upon their first visit to the grape fields that they would not receive full coverage but that coverage was limited to one-third of the face amount of the policy. Their argument that this failure prejudiced their opportunity to seek legal counsel before adjustment is unavailing because there was ample opportunity for them to have done so before executing the proofs of loss or accepting the payments. Even so, this is not the type of inequitable conduct necessary to justify reformation of a contract. If this conduct can be said to be inequitable and unconscionable, it did not induce any action on the part of any of the appellants or cause either of them to change his position in any way. Certainly the failure to so inform appellants did not cause

any of them to enter into the contract involved or to accept the payment offered. We find no merit in this contention.

The decree is affirmed.