ARKANSAS STATE HIGHWAY COMMISSION v.
ANNA WAHLGREEN, ET AL

5-4846                                    438 S.W. 2d 694

Opinion Delivered April 1, 1969

*Thomas B. Keys* and *Kenneth R. Brock* for appellant.

*Philip H. Loh* and *George J. Cambiano* for appellees.

CARLETON HARRIS, Chief Justice.    This is a highway condemnation case.    The Arkansas Highway Department filed a complaint and declaration of taking of certain lands owned by appellees, consisting of Tract No. 512, containing 27.73 acres (this tract being taken in fee simple), and Tract No. 512E, consisting of .58 acres (condemned as a temporary construction easement).    The entire property owned by appellees prior to condemnation consisted of 83 acres lying along the west side of State Highway No. 95 for approximately 1150 feet, and extending westward from said highway for ½ mile.    The lands are located ½ mile north of the Morrilton city limits.    On trial, the jury returned a verdict in the amount of $60,000.00 as just compensation to appellees, and from the judgment so entered, the Highway Department brings this appeal.    For reversal, it is asserted that the verdict is excessive in that it is not supported by substantial evidence, and it is also contended that the trial court erred in instructing the jury on a question of fact.

As to the first point, in *Arkansas State Highway Commission* v. *Kennedy,* 233 Ark. 844, 349 S.W. 2d 133, we said:

"Where there is any evidence of a substantial nature, which, by positive statement or reasonable inference, when given its strongest probative value, to support the finding of the jury, the verdict then will be sustained, although from the record presented to this court, it might seem to be against the preponderance of the credible evidence."

Accordingly, we are only concerned with whether there was substantial evidence to sustain the award. The landowners offered the testimony of four witnesses. The first was Lloyd Pearce, a licensed real estate broker, consultant, and appraiser, of Little Rock. Mr. Pearce has testified as an expert appraiser in numerous instances in state and federal courts, and is admittedly an expert in this field. In the case before us, he described the study he had made in making his appraisal, including the strip maps and construction plans of the highway department, quad sheets showing the topography of the land, aerial photographs from the Soil Conservation Service, 150 sales of real estate in and near the city of Morrilton, and a physical inspection of the property. He said he took into consideration the close proximity of the lands to the city of Morrilton, the type of road serving the property, the frontage on the road, the neighborhood surrounding the property, the proximity to commercial and industrial areas, topography, elevation, drainage, the distance from schools and churches, and the location of utilities. Pearce testified that growth of the city of Morrilton will naturally extend to the north. The testimony reflects, and the maps also to some degree, that the growth of the city to the south is blocked by the Arkansas River. To the west, growth is hampered by Point Remove Creek, and the area east of the city is taken over mostly by highway commercial development.

The witness was rather thorough in explaining how he reached his appraisal figures, but we see no need of a detailed discussion. Maps were used to show the strip of land taken. The strip bisects Tract 512 diagonally in a southeasterly to northwesterly direction, said strip being approximately 2,550 feet long, and varying in width from about 250 to 1300 feet, severing Tract 512, leaving 39.31 acres south of Interstate 40, with no access from Highway 95, and no vehicular access from the west, and 15.96 acres remaining on the north and isolated from Morrilton by the interstate highway. Water and

sewer are located 1,000 feet south of the property along Highway 95, and the area immediately south has been platted as Hart and Welter's Subdivision. The witness said that the area south of Interstate 40 is landlocked after the taking. He estimated the value of the 83 acres before the taking at $73,700.00, representing the fair market value of the property as of August 2, 1967. He estimated the value after the taking at $8,700.00, thus leaving the damage at $66,000.00.

In reaching his figure of market value before the taking, Pearce mentioned a number of sales that he considered comparable, and he concluded the 39.31 acres which lie south of the interstate after the taking to have been damaged $800.00 per acre; the damage to the 15.97 acres north of the interstate was placed at approximately $600.00 per acre. There is access to this last area at the northeast corner of the property which is located near the interchange. The appraiser felt that the highest and best use of the property before the taking would have been a residential subdivision. After the taking, he considered the area south of the interstate to have no value, because of being landlocked, and he was of the view that the highest and best use of the property north of the interstate would be for a rural homesite.

Charles D. Owens of Morrilton, engaged in the insurance and real estate business, placed a before taking value on the property of $66,400.00, and an after taking value of $7,800.00, or a difference of $58,600.00.

Gene Hewitt, engaged in the insurance and real estate business in Morrilton, testified that the before taking value was $70,000.00 to $83,000.00, and the after taking value was $13,000.00. The witness said that it was near enough to utilities in Morrilton that he considered the highest and best use before the taking to be for subdivision. Joe Wahlgreen, one of the owners, testified that the land was worth $83,000.00 prior to the taking, and nothing after the taking.

W. E. Hayes of Hartman, Arkansas, an appraiser of 6 years' service with the Highway Department, and who had appraised property for the Farm Security Administration, testified that the soil was of a very thin type, a light whitish clay of poor fertility, and that the utilities available were rural utilities, though there is natural gas. He stated that the west property line is Cedar Street, an old roadway which has not been closed, and he considered that this roadway gave access to the acreage south of the interstate, thereby preventing it from being landlocked. However, the witness stated that this was "potential" access to the property, and no one testified that a motor vehicle can be driven to this land at the present time. Hayes said that the property at the northeast corner would be enhanced by the taking, and would make a good location for a service station. This was contrary to the opinion of Pearce, who earlier testified that the southeast corner of the interchange (not owned by appellees) would be most valuable for such a purpose.[1] Hayes considered the highest and best use for the 83 acres to be agriculture, with highway frontage influence, and he estimated the market value of the whole property prior to the taking to be $20,-000.00. He gave the after value as $11,000.00, or a difference of $9,000.00.

K. D. Suthmer, a real estate appraiser employed by the Highway Department for the last 7½ years, although testifying that he was not "too familiar" with Hayes' appraisal, reached the identical damage figure, i.e., $9,-000.00, Suthmer giving the property a before taking

---

[1]This opinion was based on Pearce's view that the southeast corner is a "swing corner." He testified: "For oil companies the sites, the primary corner to this interchange would be the southeast corner of the interchange, since most tourists or people traveling, going on a trip, fill up before they leave, any traffic out of the City of Morrilton would naturally fill up here. If they're going north, they would go on across and then fill up, and on out. Any traffic to the east would fill up at this point and go east. That is called a swing corner is the description that oil companies give it."

value of $20,250.00, and an after taking value of $11,-250.00.[2] He too said that the acre in the northeast corner of the property had been enhanced because of the interstate; that it now had a more valuable use than formerly, in that it could be used for most any type of commercial use, particularly a service station. He compared the value of this corner to two similar (in his view) pieces of property at Pottsville and Atkins that had been sold to oil companies, the former sale bringing $20,000.00 for one acre, and the latter sale, $30,000.00 for 1.3 acres.[3] Suthmer also agreed with the other highway appraiser that the south residual of 31.39 acres had not been damaged because of being landlocked. To the contrary, he stated:

"There is a road that leads down to it and through it * * * it is not the best in the world, but it has access. It could be a good access, except for one little culvert that has rotted out. It could be put into shape very easily."

There is simply no way to reconcile expert opinions relative to land values where the difference in the testimony varies from $9,000.00 to $70,000.00. All gave some basis for their opinions.

Of course, the jury is the trier of the facts. They heard the witnesses on both sides testify. They saw the aerial photographs and exhibits. Possibly many were already familiar with the area. They evidently concluded that appellees' testimony was correct in that there was no access to the south 39 acres, and no enhancement of the land in the northeast corner. It is possible that they were somewhat dubious of the testimony presented by the state's witnesses, since, though the testimony reflects that the appraisals were independently made, the two witnesses came up with an

[2]Suthmer said independent appraisals were made.

[3]It developed that both of these locations were on "swing corners."

identical figure on damage. Be that as it may, we are certainly unable to say that there was no substantial evidence to support the award of $60,000.00. To take appellant's view, it would be necessary that we arbitrarily decide from the printed record that appellees' witnesses were wrong, and appellant's witnesses were right. Such action would be contrary to our case law.

Among other instructions given by the court to the jury was the following:

> "You are further instructed that it is *undisputed* that the Arkansas State Highway Department *took from* and *out of* the 83 acres owned by the defendant, *a strip of land* for the purpose of construction of Interstate 40. The compensation, or damage, to which the defendant is entitled is the difference in the fair market value of the whole 83 acres considered as a unit before the taking, and the fair market value of the remainder immediately after the taking."[4]

Appellant says that it was prejudiced by the italicized language, wherein the court said that it was undisputed that the strip of land was taken from, and out of, the total 83 acres. The department says that this charge to the jury gave rise to the implication of severance damages, and that one of its witnesses made no such allowance because he felt that enhancement offset any damage suffered.

We find no merit in this allegation. The jury had viewed all maps, these exhibits showing the exact land taken, and the exact land remaining. The exhibits clearly show that the strip contained was taken from and out of the 83 acres, and there can be no dispute of this fact. There is nothing in the instruction which says that the jury must award severance damage. No language is used which precludes the jury from finding that the

---

[4] Language italicized denotes our emphasis.

remainder was enhanced in an amount sufficient to offset damages. The giving of the instruction did not constitute error. On the whole case, we find no reversible error, and the judgment is affirmed.

It is so ordered.