Arkansas State Highway Commission *v.*
Harry Griffin, et ux

5-4066                                        411 S. W. 2d 495

Opinion delivered February 20, 1967

*George O. Green* and *Don Langston*, for appellant.

*Harold C. Rains, Jr.*, for appellees.

Carleton Harris, Chief Justice. The principal question in this case is whether a condemnor should be required to pay an enhanced price for the land condemned, which its demand alone has created. On May 27, 1965, the Arkansas State Highway Commission filed a condemnation complaint in the Circuit Court of Crawford County, condemning a part of four lots out of a tract of land described as Tract 345, owned by appellees, Harry Griffin and Louise Griffin. The sum of $7,150.00 was

deposited in the registry of the court as estimated just compensation for the taking and damaging of appellees' property. The Griffins contended that this amount was insufficient, and they asked for a jury trial to determine the amount of just compensation. On trial, the jury returned a verdict in favor of appellees in the amount of $18,500.00, and from the judgment so entered, appellant brings this appeal. For reversal, it is first asserted that the trial court erred in permitting testimony concerning land sales to oil companies, the value of such land having been greatly increased because of the proposed construction of Interstate Highway No. 40.

The evidence reflects that the Griffins had owned the tract involved since approximately 1926, and their home was located thereon. This tract was a part of property platted in 1955 into twenty-two lots fronting on U. S. Highway No. 71, and most of the lots had been sold prior to the date of taking. In 1960, appellees sold two lots to an individual named Mettler for $500.00 each, and in 1963 Mettler purchased another lot from the Griffins for $500.00. Sometime prior to August, 1964, the Highway Department determined that the proposed Interstate 40 Highway would overpass Highway 71, and there would be a major interchange in the vicinity for purposes of traffic getting on and off the new highway. In August of that year, the department sent its appraisers into the area for a market study; stakes were placed in the area, and construction plans and sketch maps became a matter of public record. Various oil companies began to go into the area and take options on particular lots for the purpose of locating service stations. Tony Zeni, business representative of the Humble Oil and Refining Company, testified that his company took an option on four lots owned by one Blaylock, and on March 2, 1965, purchased these lots. This particular property is located right on the interchange, and is considered a "primary location" for a service station.[1] Zeni testified

---

[1] Accordng to Mr. Zeni, the difference in a primary location and a secondary location depends on two factors, one being visibility, and the other access to the property. "The closer you can get to

that, in his opinion, the Humble Company would not have bought the property if an interchange had not been located there. He testified that the price paid ($59,000.00 for two acres) was greatly enhanced because of the location, and competition for the property. Evidence reflected that Sun Ray DX Oil Company bought the Mettler property (which was immediately north of the Blaylock property, and had been sold by Griffin to Mettler) for $20,000.00 on April 19, 1965, and the testimony reflects that, south of the interchange, the Texaco Company bought the property on the southeast corner, and Skelly Oil Company purchased that immediately south of Texaco.[2] We think the evidence during the trial clearly establishes that the price of property in this area "sky-rocketed" when the proposed location of Interstate 40 became known, the variance in the price of the several lots, of course, depending upon the exact location of the property desired. In valuing the Griffin property, witnesses for appellees took into consideration these sales to the oil companies (which were based solely on the location of the interchange), and it is this evidence about which appellant complains in the particular point under discussion. The question before us, therefore, is: Should the Arkansas State Highway Department be required to pay an enhanced price (for property) *which was brought about solely by its own proposed improvement?* This issue is discussed in *Nichols on Eminent Domain,* Third Edition, 1962, Volume 4, Section 12.3151, Pages 201-204, as follows:

"It rarely happens that proceedings for the condemnation of land for the public use are instituted with-

the control of access the better location you have." The witness also testified that a secondary location would be immediately adjacent to the primary location.

[2]According to the evidence, the Griffin property, here involved, would not be nearly so valuable for service station or other commercial purposes, since it is located some 600 feet from the interchange, north of the property purchased by D.X Mr. and Mrs. Griffin had previously (April, 1965) sold Sun Ray DX Oil Company two and one-half lots for $10,000.00, which are located just south of the property in this litigation.

out months, years, and, in some instances, decades of time spent in preliminary discussion and in the making of tentative plans. These discussions and plans are usually known to the owners and other persons interested in land in the vicinity of the proposed improvement, and are matters of common talk in the neighborhood. If the projected public work will be injurious to the neighborhood through which it will pass, the fact that it is hanging like the sword of Damocles over the heads of the land owners in the vicinity cannot but fail to have a depressing effect upon values, and on the other hand, if it is expected that the improvement will be of such a character as to benefit the surrounding land, values usually rise in anticipation of the construction of the improvement. When the taking is finally made, the question arises whether this anticipatory modification of values should be considered in awarding damages.

"*The general rule is that any enhancement in value which is brought about in anticipation of and by reason of a proposed improvement is to be excluded in determining the market value of such land,*" (emphasis supplied) although there is some authority which, contrariwise, unqualifiedly allows recovery for such enhanced value."

While, as pointed out, there is some authority to the contrary, we like the logic of the general rule, and align ourselves with those who have adopted that view. In *Bonaparte* v. *Mayor, etc., of Baltimore,* 101 Atlantic 594, the Maryland Court of Appeals (corresponding to our Supreme Court) said:

"The measure of the compensation to which the appellant is entitled in this proceeding is the actual market value of the property condemned. Its market value depends upon the uses for which it is available, and any special utility which may tend to enhance its value in the market is a proper element to be considered. The availability of the property for a particular use, contributing to its market value, is not to be ignored merely

because it has not in fact been applied to that use. The valuation for condemnation purposes *must disregard the effect of the public project, for which the property is acquired* (our emphasis), but must take into consideration all the uses to which it is capable of being applied at the time of the appropriation and which affect its marketability.''

Actually, as far back as 1891, we recognized this same principle. In *Newgass* v. *Railway Company*, 54 Ark. 140, 15 S. W. 188, which involved a condemnation proceeding instituted by the St. Louis, Arkansas and Texas Railway Company for a right-of-way, we said:

''All that the constitution guarantees or the law demands is that just compensation shall be made to the owner in return for property appropriated by the public. A rule that would exact of a corporation the payment of a sum to cover the value of a railroad as such, constructed at its own expense, would go beyond the demands of justice, and could find no sort of countenance in conscience or in law outside of the strict letter and fanciful presumptions of the rule stated.

''The same question has been often adjudicated by the courts of the highest dignity and learning in sister States, and the decided weight of adjudged cases is against the appellant. Aside from adjudication, reason and justice condemn the contention.* * *

''The measure of compensation is the value which the land taken would have had at the time of filing the petition, if the road had not been constructed on it, together with the difference between the present value of the owner's contiguous land, with the road constructed where it is and what would have been its present value if the road had not been built. (Citing case) And in determining as to the value of the land taken, any appreciation or deterioration that may have resulted to it specially by reason of the building of the road on it will be disregarded* * *.''

Also, though not passing on the question, we recognized the general rule in *Arkansas State Highway Commission* v. *Cochran,* 230 Ark. 881, 327 S. W. 2d 733. In accordance with the authorities cited, we hold that the testimony as to the enhanced value of the Griffin property, occasioned by the contemplated construction of Interstate 40, was inadmissible. The proper valuation date for appellants' property is the date of taking, May 27, 1965; although the oil company purchases of nearby properties were made shortly before this date, these inflated sales cannot be used in arriving at the before value of the property. Only normal inflation, *i. e.,* that inflation which is engendered by the general economy, can be taken into consideration. As pointed out in *Newgass,* it is our view that reason and justice demand this conclusion.

For its second point, appellant complains that the court permitted incompetent evidence, in that appellees introduced testimony of damage to their lands based on commercial values, and also introduced evidence relating to damage (loss of the dwelling located on the lands) which was based on residential values. Appellant says that these are inconsistent uses, that the landowner is entitled only to damages for the highest and best use of his property, but that the court's action in admitting the evidence had the effect of allowing recovery of double damages, *i. e.,* both for commercial and residential purposes. It is also contended that the evidence given concerning the value of the home was inadmissible.

It is entirely proper to allow evidence of all potential uses of a landowner's property. In *Arkansas State Highway Commission* v. *Brewer,* 240 Ark. 390, 400 S. W. 2d 276, we said:

"The trial court properly admitted the landowners' proof as to both the agricultural use and the industrial potential of their land. The proof should not be limited to either. Our rule is succinctly stated in the case of *Ft.*

*Smith & Van Buren Bridge Dist.* v. *Scott,* 103 Ark. 405, 147 S. W. 440:

" 'The measure of the owner's compensation for the land condemned is the market value thereof at the time of the taking for all purposes, comprehending its availability *for any use* to which it is plainly adapted, as well as the most valuable purpose for which it *can be used* and will bring most in the market.'

See, also, *Arkansas State Highway· Comm.* v. *O and B, Inc.,* 227 Ark. 739, 301 S. W. 2d 5. In the case at bar the appellees had the right to show all the purposes to which their land is adapted in order for the jury to determine just compensation."

Of course, a verdict rendered by a jury which was partially based on testimony relating to the commercial value of the land, and partially based on testimony, relating to the land's value for residential purposes, would not be proper, but it is for the jury to determine the best and highest use of a landowner's property.

It is also asserted that the valuation placed on the Griffin home was improper, appellant stating that these witnesses considered only the cost of the house (at the time it was built), rather than depreciating it on the basis of its age. In *Arkansas State Highway Commission* v. *Richards,* 229 Ark. 783, 318 S. W. 2d 605, we commented on the question of "cost as criterion," stating:

"* * * As has been stated previously where the character of the property is such as not to be susceptible to the application of the market value doctrine, resort has been had, among other things, to the original cost of the property, or to the current cost of reproduction less depreciation. Market value, it has been held, is not equivalent to the amount expended for the property by the owner.

"*The proper measure is the market value of the*

*land with the buildings upon it* (emphasis supplied), and the owner therefore receives nothing for the buildings unless they increase the market value of the land. Accordingly, evidence of the structural value of the buildings is not admissible as an independent test of value. When, however, it is shown that the character of the buildings is well adapted to the location the structural cost of the buildings, after making proper deductions for depreciation by wear and tear, is a reasonable test of the amount by which the buildings enhance the market value of the property. As in other cases of determining market value, not only the character and condition of the building, but also the uses to which it might be put, are matters for consideration."

Because of the errors herein pointed out, the judgment is reversed, and the cause is remanded to the Crawford County Circuit Court with instructions to proceed in a manner not inconsistent with this opinion.