ARKANSAS STATE HIGHWAY COMM'N *v.*
A. B. LITTLEFIELD AND W. C. LITTLEFIELD,
D/B/A TRI-COUNTY OIL CO.

5-5071                                    447 S. W. 2d 146

Opinion delivered November 24, 1969

*Thomas B. Keys* and *Kenneth R. Brock,* for appellant.

*Ralph W. Robinson,* for appellees.

LYLE BROWN, Justice. Appellant, Arkansas State Highway Commission, condemned 0.31 acres out of a 6.40 acre tract belonging to appellees, A. B. and W. C. Littlefield, d/b/a Tri-County Oil Company. The crucial question on appeal is whether the coming of Interstate 40 influenced the before values introduced on behalf of the landowners.

The subject lands are located in the southeast corner of the I-40 interchange at Alma. That is at the point in Crawford County where U. S. Highways 64 and 71 have converged for many years. The landowners are large-scale and long time distributors of oil and gas in western Arkansas and eastern Oklahoma; in some instances they operate their own retail outlets. On this tract they built a modern truck stop. W. C. Littlefield and the landowners' expert witnesses testified that the location was valuable because of the convergence of Highways 64 and 71. In fact they all testified that the coming of I-40 in no manner influenced their fixing of the before value. If on the date of the taking the market value of the land had been inflated by the imminence of I-40, then the inflated value could not be used in arriving at the before value of the property. *Arkansas State Highway Comm'n* v. *Griffin,* 241 Ark. 1033, 411 S. W. 2d 495 (1967).

The landowners and their three expert witnesses

used what they considered one comparable sale. That was Dunn to the Littlefields, February 24, 1965, for $90,000, being the identical 6.40 acre tract. It was their opinion that the coming of I-40 had no impact on that sale. It was the further opinion of the Littlefield's experts that immediately prior to the taking in May 1965 the tract was worth $133,000. They attributed the increase in value to skyrocketed prices generally and to a fill which the Littlefields made on the land.

Whether the Littlefields and their experts had knowledge that the I-40 project had an inflationary impact is irrelevant; if the record evidence shows that such condition arose from the project then we must recognize that condition as an economic fact. It was pointed out in *Griffin* that highway condemnation proceedings are usually instituted after months and years of discussion and planning, all of which are well known to owners and other persons interested in land in the vicinity of the improvement. If the project is going to be injurious to the neighborhood, that fact "cannot but fail to have a depressing effect upon values." If the improvement is bound to benefit some or all the surrounding land then that fact is likewise generally known and values naturally rise. No economic fact is more thoroughly established and it cannot be disestablished by a landowner or expert whose opinion, however honest, contravenes it. We have examined the record in light of our comments and here is what we find:

(1) An expert for the landowners testified that the land in the area of the interchange was worth $1,000 an acre in 1952;

(2) By 1960 preliminary planning was so far advanced that the proposed route of I-40 was publicized on tourist maps distributed free to the public by the highway commission;

(3) In 1961 surveyors and engineers were busily

engaged in the vicinity of the proposed Alma interchange;

(4)    In 1963 traffic count maps were issued showing the proposed location of the interchange;

(5)    Cecil Dunn, consignee for Skelly Oil Company, acquired the subject property in 1963 for $30,000;

(6)    In June 1964 construction plans were issued and made available to the public; minor changes thereafter made as respected the Alma interchange did not affect the subject property;

(7)    Six months later D-X Oil Company paid $30,-000 for 1.8 acres at the interchange;

(8)    Humble Oil Company, in February 1965, paid $59,000 for three acres;

(9)    The Littlefields, with financing from Skelly Oil Company, bought their acreage in February 1965 for $90,000; and

(10)    Three months after the Littlefields' purchase, the highway commission filed its condemnation and thereby obtained an order of taking. The Littlefields' appraisers valued the subject lands at that time at $133,000, or $20,800 an acre.

The landowners afford no plausible explanation as to why the lands increased in value some $60,000 from 1963 to 1965—the period during which Cecil Dunn held the title; nor why it would increase from $90,000 to $133,000 within three months. The latter increase allegedly occurred between the time of the Littlefields' purchase and the taking. The inescapable conclusion is that the increases resulted from the I-40 interchange.

We should mention one other point because of a probable retrial. It was revealed on cross-examination

that the landowners' witness, Mack Bolding, did not take into consideration in making his appraisal the plans and specifications for construction of I-40. (Those plans were set up in the pleading filed by the commission.) The after taking value cannot be properly ascertained in the manner followed by Bolding. An appraiser, in viewing the lands after a partial taking, must consider the remainder as if the improvements were in place according to the plans and specifications. To proceed otherwise could well cause an injustice to either the condemnor or the landowner. For example, plans and specifications are vital to a determination of such factors as damages to the remainder, as well as possible enhancement in value.

Reversed and remanded.