ARKANSAS STATE HIGHWAY COMMISSION
*v.* Marvin V. PEARROW, et al.

CA 83-376                                                674 S.W.2d 1

Court of Appeals of Arkansas
Division II
Opinion delivered August 29, 1984

*Thomas B. Keys* and *Philip N. Gowan,* for appellant.

*Boyett, Morgan & Millar, P.A.* and *Charles O. Pearrow,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. The Arkansas State Highway Commission appeals from a jury verdict awarding damages to the Pearrows for the taking of a portion of their property for highway purposes. The Commission contends that the trial court erred in not striking the testimony of appellees' expert witness because she had considered impermissible elements in her valuation of the property after the taking. The appellees cross-appealed contending that the trial court erred in not permitting their expert to testify with regard to a comparable sale made after the taking.

We find merit in the appellant's contention and reverse and remand the case for a new trial. The appellees' land was an irregularly shaped 16 acre tract lying just northeast of Bald Knob with easy access to the town along Highway 67. In 1974 the State Highway Department condemned approximately three acres of appellees' property leaving a 10 acre tract still fronting on Highway 67 and severing without access a tract of 1½ acres. After completion of the Interstate, Highway 67 became a secondary road and the route via Highway 67 to appellees' property was changed so as to contain a "dangerous double-S curve."

The appellees' expert witness testified that based upon comparable sales for a period of years preceding the taking of the property with proper adjustment for natural appreciation in land values it was her opinion that the fair market value of the entire 16 acres before the taking was $6,000 per acre for a total of $96,000. She testified that in her opinion the value of the property after the taking was $10,966. It is her testimony as to the manner in which she arrived at the value of the 10 acre parcel after the taking which gives rise to the issue presented.

The expert testified that the highest and best use of the property before the taking was for commercial or light industrial purposes. She stated that some of the diminution in value was attributable to a reduction of the acreage of the

tract to less than that usually desired for commercial or industrial purposes. Some diminution was attributable to a reduction in width and to the fact that the new highway had been raised 20 feet which caused drainage problems and a loss of visibility from town. She also took into consideration the fact that Highway 67 on which the property fronted had become a secondary road cut off from town. She considered some damage to the access because it now took longer to get to the tract from Bald Knob and now involved a dangerous curve.

She also stated that she had given consideration to the fact that the new highway had diverted the traffic and made the former highway a service road. On cross-examination she was asked the following questions:

Q. Now, you have testified that this property now is cut off from Bald Knob. That was one of the elements you considered in arriving at your damage of five thousand dollars ($5,000) an acre, is that right?

A. Yes, sir.

. . . .

A. It's been severed from the city. There is a barrier twenty (20) feet tall.

. . . .

Q. Are you saying that you can't go directly to Bald Knob, like you could before?

A. That's correct.

Q. Now, it's a little further to go, is that it?

A. It's on a secondary road, and you are travelling in a curve.

Q. I wanted to ask you about this secondary road business. Is that one of the elements that you took into

consideration, in arriving at your five thousand dollar ($5,000) an acre damages?

A. *It decreased the traffic pattern on that for commercial, yes, sir.*

Q. You damaged that, *and that is part of your five thousand dollar ($5,000) damages?*

A. *Yes, sir.*

. . . .

Q. That's good. That's the one I'm talking about of that five thousand dollars ($5,000) an acre damages, that you have attributed to the remaining lands, can you tell me how much of that five thousand dollars ($5,000) an acre you attributed to the fact that you have to go a little further to get to Bald Knob? Can you break it out?

A. Not into a dollar amount. I didn't do that, sir.

Q. What about the fact that now the property fronts a secondary highway, *with relocation of traffic? How much of the five thousand dollars ($5,000) an acre do you attribute to that?*

A. I took that into consideration. But I did not break down a dollar amount and place that on there.

Q. *You did consider those elements in arriving at your damages?*

A. *Yes sir.*

MR. GOWEN: Judge, we have a motion with reference to her testimony.

The parties agree as to the rule of law to be applied but they disagree concerning its application. In *Ark. State Hwy. Comm.* v. *Bingham,* 231 Ark. 934, 333 S.W.2d 728 (1960) the

court declared that a property owner has no vested right in the continuation of the flow of traffic past his property. Any diminution of value occasioned by a public improvement which diverts the main flow of traffic from in front of one's premises is not compensable. The change in traffic flow is the result of a lawful act on the part of the authorities and it not the taking or damaging of property. It was also pointed out in *Bingham* that the right to continued flow of traffic is not to be confused with the property rights of ingress and egress for which compensation may be awarded. *Ark. State Hwy. Comm.* v. *Bowers*, 248 Ark. 388, 451 S.W.2d 728 (1970).

The appellant contends that appellees' expert's testimony should have been stricken because in arriving at total just compensation she had considered an impermissible element—diminution in value due to diversion of traffic. The appellees contend that the court did not err in denying the motion to strike because the overall testimony of the witness indicates that she was referring to a reduction in value for commercial use due to change in the character of the land and because of damage to its access. From our examination of testimony we think it is clear that the witness attributed diminution in value to access difficulty, severance from the city by the raised level of the highway, and the reduction in size and width of the tract. She also considered and attributed some of the loss to the relocation of traffic. We cannot conclude that the answers on which the appellant's argument is based were taken out of context.

The issue raised by the appellees on cross-appeal should be addressed because of the likelihood that it will arise on retrial. An objection was sustained to the testimony of appellees' expert with regard to a comparable sale of property within 500 feet of an interchange where it was shown that the sale was consummated seven months after the condemnation proceedings on this property were undertaken. Based upon the proffer of that testimony we cannot conclude that it was objectionable. It is not the fact that a transaction occurs after the condemnation which makes some sales inadmissible. The question to determine is whether knowledge of location of the public improvement caused an inflated price to be given for the property. *Ark.*

*State Hwy. Comm.* v. *Griffin,* 241 Ark. 1033, 411 S.W.2d 495 (1967); *Ark. State Hwy. Comm.* v. *Littlefield,* 247 Ark. 686, 447 S.W.2d 146 (1969). In both of those cases the court rejected testimony of purported comparable sales because they found that the evidence clearly established that the price of the property "sky-rocketed" when the proposed location of the Interstate became known. Those cases hold that the highway department should not be required to pay an enhanced value for property which was brought about solely by its own proposed improvement. It is only the enhancement in value which is brought about in anticipation or by reason of the proposed improvement which is to be excluded. If it can be shown that the enhancement in value of a particular piece of property was brought about by economic factors other than the proposed improvement, the fact that it was consummated close in point of time to the erection of the improvement is not conclusive.

The proffered testimony pertinent to this issue was based almost entirely on hearsay statements repeated by the witness. The objection made and sustained was not on grounds of hearsay. The witness testified that the property had been listed with her in 1974 at a price of $40,000 which was subsequently reduced to $32,000 and sold in April 1975. She testified that the purchaser had told her that the location of the interstate had no impact on the sale because he had been negotiating for the purchase of the property at that sale price for several years prior to the actual issuance of the deed. It was also shown that the price paid by this buyer did not exceed the figure which the witness had previously testified was the fair market value of other comparables.

If on retrial it is shown by competent testimony that the price paid by that buyer was not enhanced by knowledge of the location of the interstate, testimony with regard to that sale should be admitted.

Reversed and remanded.

CORBIN and GLAZE, JJ., agree.