ARKANSAS STATE HIGHWAY COMM'N *v.*
Theola McALISTER et al

5-4990                                    447 S. W. 2d 649

Opinion delivered December 8, 1969

758

*Thomas B. Keys* and *Philip N. Gowen,* for appellant.

*Gordon, Gordon & Eddy,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant asks us to reverse a judgment in an eminent domain proceeding against appellees, asserting that the jury verdict for $6,500 compensation is excessive, because it is not supported by substantial evidence. We find the evidence sufficient to support the judgment.

Appellant took 14.11 acres of land from a tract of approximately 271 acres owned by appellees near Morrilton. On August 3, 1967, the date of the taking, the tract was bisected by Highway 287, a gravel road. Approximately 160 acres of the property lay north of this highway. The tract taken was a strip 1,875 feet long and varied from 300 to 350 feet in width, severing the portion of the lands south of Highway 287. It was taken for construction of Interstate Highway No. 40, a controlled-access highway. The only access between the residual of approximately 40 acres north of the new right-of-way and about 57 acres south of the highway was a 6 x 6 concrete box culvert. The property lay about one-half mile east of Highway No. 9 and the city limits of Morrilton. It had approximately one-half mile of frontage on Highway 287. It was conceded by one of the state's expert value witnesses that the use of the south 57 acres was somewhat limited after the highway went

through and that the property does not have access along Highway 287 as it did before. He stated that while cattle could use the 6 x 6 culvert, it would not be practical to get machinery or vehicles through it. None of the value witnesses considered that the tract remaining north of Highway 287 was damaged. All of them considered that the tract south of that highway was damaged. They only differed as to land values before and after the taking.

Arletha Manley was the only one of the landowners called to testify. The property belonged to her, her mother and her brothers and sisters. She is a teacher in the Conway Public School System. Her family has owned the property as long as she can remember. Her mother, Theola McAlister, lives on the property. The family was using the property for growing corn, peanuts, potatoes, hay and as pasture. About 200 acres of the land, according to her, were devoted to pasture. She stated that there was a pond in the area that was taken which had constituted a watering place for their cattle. The cattle had been kept on the north side of Highway 287 in the daytime and on the south side at night. She testified that her mother milked five or six cows daily. She calculated that about 2½ acres were required to support one cow on this property. She estimated the hay cut from the property each year at 400 to 500 bales. This witness stated that, in her opinion, the fair market value of the property on the date of the taking was $300 an acre. She did not state the value of the remaining property after the taking.

In an attempt to sustain its burden to demonstrate that this landowner's opinion as to value was without substantial basis, appellant's attorney only asked her whether she was familiar with any sales of land in this area around the farm, and whether she knew of any sales of farmland for $300 an acre. Her answer to the first inquiry was in the affirmative and to the second in the negative. Her value testimony was not based upon

comparable sales. Even if it had been, the mere fact that she did not know of any sales of farmland at $300 an acre would not have demonstrated that she had no reasonable basis for her opinion. So, her testimony, at least as to the value of the lands taken must be considered as substantial evidence. See *Arkansas State Highway Commission* v. *Russell,* 240 Ark. 21; 398 S. W. 2d 201.

Since the testimony of the landowner could support a verdict only slightly in excess of $4,200, the result in this case depends upon whether the testimony of Lloyd Pearce, the only other witness for appellees, constituted substantial evidence. We find that it did.

Mr. Pearce is a real estate broker, consultant, and appraiser. The qualifications as a real estate appraiser he stated were unquestionably such as to require consideration of his testimony, if it was properly supported. He stated that before he made his appraisal he ascertained local conditions, checked on the location of utilities as they applied to the property, and ascertained economic features of the area. He also studied the Arkansas River Valley Study, the effects of navigation on the area surrounding the Arkansas River, and a number of sales of property throughout the county. He made a physical inspection of the property and its improvements. In making his appraisal, as elements that affected property values, he considered that lands in the area are closely and tightly held and that there has been an upward increase in land values in the particular area of this tract in the past five years. Among the factors he considered in appraising this property were the growth of the city of Morrilton, the roads serving the property, the surrounding neighborhood and community, the highest and best use for the land, supply and demand for lands in the area, physical improvements on the property and sales of other lands in the area.

Pearce found a six-room residence, barn and two

storage sheds located on the part of the land south of Highway 287. Electricity was available. He stated that the highest and best use of the property was ". . . cattle raising, and with some potential for future urban development. It is in the line of the development of the City of Morrilton. There was an area along the road for homesites—rural homesites. As I say, the highest and best use is one of agricultural nature, with some potential for future development." He investigated approximately 70 sales in the county, and said that he considered 12 in relation to the property.

One basis of appellant's attack on the testimony of this witness is that the sales which he relied upon in arriving at his valuation figures were not of lands comparable to the McAlister property. Pearce placed a value of $250 per acre on the McAlister tract before the taking and a damage of $6,450, by reason of decrease of value attributable to the taking. On direct examination, he did not describe any of the sales relied upon by him. He detailed two on cross-examination.

One of the sales to which he referred was by one McAlister to Interstate Manufacturing Company in August, 1963. This was a 40-acre tract one mile west of the subject property and one-half mile north of the Morrilton city limits. It sold for $250 an acre in August of 1963 for future development. Access to that property was via the "Poor Farm Road." He described the tract as fronting on a trail, 20 feet in width, maintained by the county, but not a dedicated road. The other sale about which he testified was from Oates to Stobaugh on March 1, 1966. That tract was 1½ miles south of the subject property. It had frontage on a gravel road. It was closer to the city limits than the subject property. It contained about 40 acres, one-half of which was wooded and lay on a steep ridge. Pearce stated that this property could be expected to develop for urban use.

When further asked to give another sale he felt

comparable, the witness said, "There is another sale—"
when he was interrupted by the cross-examiner. Later,
on cross-examination, the following took place:

"Q. Mr. Pearce, I would still like for you to give
another sale of this type of land at $250.00
an acre.

A. Would you accept one at $290.00 per acre?

Q. It depends on where it is and what it is and
its relation to the subject property.

A. This is approximately a mile south of the
property.

Q. All right. That's on the other side of Morril-
ton, right?

A. Yes, sir.

Q. I am asking about a sale comparable to the
subject property. Do you mean to tell the
jury you made an extensive study of the mar-
ket and can't give one sale that is compara-
ble? The only sale that joins the property you
state it is not comparable in your opinion, it
doesn't reflect market value?

A. That is the only sale I know of adjacent to
the property I would consider to represent
market value."

On redirect examination, Pearce stated that he consid-
ered sales other than those about which appellant's at-
torney asked him and other than those related on cross-
examination. On recross-examination, no further in-
quiry about comparable sales was made of the witness.
We are unable to say that it was demonstrated by ap-
pellant that Pearce relied only upon these two sales as
a basis for his opinion. We are also unable to say that

these two sales were not comparable as a matter of law. It was for the jury to determine the weight to be given to the testimony of this witness based on these sales. Mr. Pearce stated that land values throughout the area in question had increased 10 percent per year over the past five years. He stated that adjustments would have to be made, when a sale took place several years in the past, not only for the trend in prices, but for the uses, size, topography, improvements, locations relative to the city, and supply and demand for lands in the area. He testified that some land within one-half mile of this property was selling for $1,000 and $1,200 per acre three years earlier. In considering comparability, we have recognized that because no two tracts are identical, the courts must allow reasonable latitude in evaluating sales. *Arkansas State Highway Commission* v. *Clark*, 247 Ark. 165, 444 S. W. 2d 702. We also said in *Arkansas State Highway Commission* v. *Witkowski*, 236 Ark. 66, 364 S. W. 2d 309:

> "There can be no fixed definition of similarity or comparability. Similarity does not mean identical, however it does require some reasonable resemblance. See Nichols, Eminent Domain, Vol. 5, § 21.31, p. 439. There are certain criteria of similarity which can be utilized to establish a reasonable resemblance. Important factors of similarity to be considered are location, size and sale price; conditions surrounding the sale of the property, such as the date and character of the sale; business and residential advantages or disadvantages; unimproved, improved or developed land."

Another attack made upon this witness' testimony was his failure to take into consideration the sale of an 80-acre tract abutting the McAlister property for $125 per acre in March of 1967 and the sale of a 53-acre tract which lay immediately east of the subject property in April, 1964, for approximately $50 per acre.

The land lying south of the McAlister tract was

sold by one Wallenjohn to Nash. Pearce explained that he did not consider this sale because he did not consider it to be an arm's length transaction. He stated that the property had never been exposed for sale on the open market, that he understood that an incompetent was involved, and that the price was much less than what other lands had brought around the city of Morrilton. He also testified that he had talked to one person who had offered to purchase the property for more than it brought. In rebuttal to value testimony given by witnesses for appellant relying on this sale, Pearce pointed out that the land lay along a ridge extending from east to west with an elevation variation of 200 feet in approximately one-quarter of a mile. He compared this variation to the height of a 20-story modern office building. In contrast, he said that there was only a 20 foot variation in elevation in the McAlister property. One of appellant's witnesses stated that this tract did not have good access or highway frontage since it merely "point cornered" on Highway 287.

The 53-acre tract of land was sold by one Stover to Wingo. Pearce did not consider that sale because he stated that it was a landlocked parcel purchased by Wingo who owned adjoining lands through which he would have access to the property. Appellant's expert appraiser confirmed the lack of highway access to this tract, except by traveling through the property involved here, or the property already owned by the purchaser Wingo. The reasonableness of the explanation of the witness for his failure to consider these sales was for determination by the jury in weighing his testimony. It does not render his testimony insubstantial as a matter of law.

Appellant also questions the amount of damages attributed by Pearce to the taking, saying that his appraisal amounted to $50 per acre while appellant's witnesses testified that the damage to this portion amounted to only $25 per acre. Pearce considered the McAlister

lands to be effectively severed, because of the lack of means of travel back and forth between the properties without considerable travel to Highway 9 to cross the Interstate Highway. He considered the box culvert useless as a cattle pass. He had seen futile efforts to drive cattle through such a culvert. He remarked on the fact that the 57-acre tract south of the Interstate Highway had been effectively cut off from the headquarters at the homesite, thus isolating the area in which the hay meadows were located. He also took into consideration the fact that the cattle watering area formerly fed by a creek had been destroyed by the taking. He stated that it would no longer be feasible to develop the property as a unit because of the severance of the 57 acres. What we said in *Arkansas State Highway Commission* v. *Wahlgreen,* 246 Ark. 472, 438 S. W. 2d 694, is appropriate here. We stated:

> "* * * To take appellant's view, it would be necessary that we arbitrarily decide from the printed record that appellees' witnesses were wrong, and appellant's witnesses were right. Such action would be contrary to our case law."

Pearce's opinion as to "before and after" values indicated a difference of $6,450—$50 less than the jury verdict. Yet we find substantial evidence to support the verdict. Pearce's valuation of the lands taken was $3,-550. His estimate of severance damages was $2,900. Aletha Manley valued the lands at $300 per acre before the taking.

We have long recognized that one approach to determination of just compensation is a formula consisting basically of two elements, *i. e.,* (1) value of the lands taken and (2) damage resulting to the remainder of the tract, usually referred to as severance damages. *Springfield and Memphis Railway Co.* v. *Rhea,* 44 Ark. 258; *Young* v. *Arkansas State Highway Commission,* 242 Ark. 812, 415 S. W. 2d 575; *Stuttgart and R. B. R.*

*Co.* v. *Kocourek,* 101 Ark. 47, 141 S. W. 511; *Arkansas Power & Light Co.* v. *Mayo,* 244 Ark. 435, 425 S. W. 2d 531; *Clark County* v. *Mitchell,* 223 Ark. 404, 266 S. W. 2d 831. We have said that in partial taking cases the testimony should be first directed to the value of the lands taken and then to the damage resulting to the remainder of the tract. *Springfield and Memphis Railway* v. *Rhea, supra.* We have recognized that evidence of the value of lands taken plus damages to the remainder is not only admissible but that these two elements are appropriately considered by many appraisers as guides for determining "before and after values." *Young* v. *Arkansas State Highway Commission, supra.* In *Young,* we held that even though the court's instructions to the jury required a verdict reflecting the difference between "before and after values" rather than value of the lands taken plus severance damages, the landowner might present to the jury a resume' of testimony relating to one of the elements, which, in that case, was severance damages. Certainly, it could only have been anticipated that the jury might take the same approach. In so doing, they are accorded great latitude in the consideration of testimony and are not restricted to values of, or estimates of damage to, real estate fixed by the opinion of one or more witnesses. *Griffin* v. *Searcy County,* 150 Ark. 423, 234 S. W. 270. In the case last cited, we sustained a verdict for an amount of total compensation not only less than that which could be arrived at from the testimony of any witness but also less than the lowest estimate of severance damages alone. We said that the jury might well have considered that the only damage in that case was the value of the land actually taken plus the cost of constructing a road crossing. We also said that in testing the evidence supporting a verdict for sufficiency, we would consider it in the light most favorable to the appellee.

When we do this here, we find that according to the testimony of the landowner, the 13.65 acres taken[1]

---

[1] 0.46 acre was already in a highway right-of-way.

would have had a value of $4,095 or $545 more than Pearce assigned to them. The range of estimated damages to the remaining lands was from $2,900 by Pearce to $1,450 by one of appellant's expert appraisers. Thus, the result reached by the jury was well within the range of testimony offered on the two critical elements of damage, when they are considered separately.

This approach is in harmony with our decisions in partial taking cases such as *Arkansas State Highway Commission* v. *Wilmans,* 236 Ark. 945, 370 S. W. 2d 802, and *Arkansas State Highway Commission* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201. In the former, we held that a motion to strike only the "before values" given by a witness should have been granted because it included an improper element of damages. In the latter we rejected the argument that when a witness' "after values" are stricken, his "before values" should also be stricken because the two are so closely related that one may be misleading without the other. Of course, "before values" relate to lands taken as much as they do to remaining lands.

We consider here only the particular situation existing in this case, *i. e.,* when there is testimony which could be related separately to values of lands taken and to damages to remaining lands. We do not reach the situation which would be involved if all testimony related to "before and after" values only, and the verdict exceeded the greatest difference in values stated by any witness.

Since we cannot say that the testimony on behalf of appellees was not substantial, the judgment is affirmed.

HARRIS, C. J. and JONES, J., would offer a remittitur of $50.

BYRD, J., concurs.