ARKANSAS STATE HIGHWAY COMM'N v.
CHARLES L. ORMOND AND ELIZABETH ANN ORMOND, HIS WIFE

5-5021                                    448 S. W. 2d 354

Opinion delivered December 22, 1969

868

*Thomas Keys* and *Kenneth Brock,* for appellant.

*Felver A. Rowell, Jr.,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant took 11.01 acres from a 262-acre tract owned by appellees for the construction of Interstate Highway 40, a controlled-ac-

cess highway. It appeals from a judgment awarding appellees $12,000 as just compensation, asserting only two grounds for reversal. The first is the refusal of the trial court to strike that portion of the testimony of Charles L. Ormond, one of the landowners, relating to values based on use of the land for commercial catfish farming. The other is that there was no substantial evidence to support the verdict.

We agree that appellant's motion to strike that portion of Ormond's value testimony of which it complained should have been sustained. He had fixed a value of $102,114 on the whole tract before the taking and a value of $17,240 on the remaining lands, consisting of 92.5 acres north of, and 158 acres south of, the new highway. Thus, his difference between before and after values was $84,874.

Ormond, a realtor and farmer, demonstrated his familiarity with real estate values in Conway County. He testified that the highest and best use for the lands was for catfish farming, and that he had commenced operations to devote the lands to that purpose before the taking. According to him, he had constructed a preliminary pond in 1963 or 1964 and had constructed a dam on the north part of the land which had not been completed when the condemnation suit was filed. Ormond stated that he acquired the land several years before the taking after having studied the entire county to find land suitable for flooding. He felt that this land had these attributes and a terrain such that adjoining lands would not be flooded from dams necessary for his purposes. This taking destroyed accessibility to the north residual, so that there was no way to proceed with catfish farming plans.

On cross-examination, it was revealed that Ormond had made extensive investigation as to markets, prices, demands, methods, yields and costs he might anticipate when his plans were implemented. He admitted that his

before taking value was based entirely on income he anticipated upon the basis of his own estimates of market prices, yields and costs. He also admitted that prices would fluctuate and that one could not say as much as a year in advance what the price would be when the crop was yielded. His estimate of costs included 6c for fingerling minnows, even though he acknowledged a current range of 4½c to 7c.

There is nothing whatever in the record to indicate that Ormond had any experience in this business or anything related thereto. Appellant's objection was that the value based upon his anticipated future profits was highly speculative. Thus, appellant met its burden of showing that there was no reasonable basis for Ormond's opinion of the value of the entire tract before the taking. Even if we should consider that evidence of income and production from commercial catfish farming is admissible under the recognized exception in cases of agricultural property, as appellees urge, there is no exception which permits such values to be based on pure speculation, as must be the case when the testimony is given by one without experience or expertise in the undertaking about which he testifies, when there is no history as to the particular land upon which to base anticipated income or production. See *Little Rock & Ft. S. Ry. Co.* v. *Alister,* 62 Ark. 1, 34 S. W. 82.

Even though the value testimony of Ormond was improper, this does not require reversal, if other evidence is sufficient to sustain the verdict. *Owen* v. *Jones,* 14 Ark. 502; *Jones* v. *Malvern Lumber Co.,* 58 Ark. 125, 23 S. W. 679. It is only when there is no other evidence to sustain the verdict or when it is manifest that appellant was prejudiced by the incompetent evidence that a reversal is proper under circumstances existing here. See *Owen* v. *Jones,* supra; *Fordyce* v. *McCants,* 51 Ark. 509, 11 S. W. 694, 4 L. R. A. 296, 14 Am. St. R. 69. We have held that error will not require reversal where it is manifestly not prejudicial, or where it is evident

that the error did not affect the verdict. *Insured Lloyd's v. Mayo,* 244 Ark. 802, 427 S. W. 2d 164; *Keathley v. Yates,* 232 Ark. 473, 338 S. W. 2d 335; *Street v. Shull,* 187 Ark. 180, 58 S. W. 2d 932; *Lamden v. St. Louis Southwestern Ry. Co.,* 115 Ark. 238, 170 S. W. 1001.

We must determine, then, whether, in view of other evidence in the case, this error was prejudicial to appellant or whether it affected the verdict. In doing so we must also determine the other question posed, *i. e.,* whether there was substantial evidence to support the jury verdict. We find that there was and that the error in relation to the Ormond testimony does not require reversal.

It must be remembered that only Ormond's opinion as to the land value before the taking would have been stricken. This would leave for the jury's consideration, not only Ormond's opinion as to the value of the remaining lands, but his testimony as to the characteristics of the land and as to a much disputed point—its highest and best use. This was appropriate. Ormond was entitled to show every advantage that his property possessed, present and prospective, in order that the jury might satisfactorily determine what price it could have been sold for on the market. *Arkansas State Highway Commission v. Carder,* 28 Ark. 8, 305 S. W. 2d 330; *Arkansas State Highway Commission v. O. & B., Inc.,* 227 Ark. 739, 301 S. W. 2d 5; *City of El Dorado v. Scruggs,* 113 Ark. 239, 168 S. W. 846; *Little Rock Junction Ry. v. Woodruff,* 49 Ark. 381, 5 S. W. 792, 4 Am. St. R. 51; *Kansas City Southern Ry. Co. v. Boles,* 88 Ark. 602, 115 S. W. 375. He could state and have his witnesses state any and every fact concerning the property which he would naturally be supposed to adduce in order to place it in an advantageous light if he were selling it to a private individual. *Little Rock Junction Ry. v. Woodruff,* supra; *Stuttgart & R. B. R. Co. v. Kocourek,* 101 Ark. 47, 141 S. W. 511. An owner is entitled to show the availability of his property for any and all purposes

to which it is plainly adapted, or for which it is likely to have value and induce purchases. *Arkansas State Highway Commission* v. *Brewer*, 240 Ark. 390, 400 S. W. 2d 276; *Arkansas State Highway Commission* v. *Griffin*, 241 Ark. 1033, 411 S. W. 2d 495; *Gurdon & Ft. Smith R. Co.* v. *Vaught*, 97 Ark. 234, 133 S. W. 1019. The same considerations are to be regarded as in a sale between private parties. *Ft. Smith & Van Buren Bridge District* v. *Scott*, 103 Ark. 405, 147 S. W. 440; *Little Rock & Fort Smith Railway* v. *McGehee*, 41 Ark. 202.

Appellees also offered the testimony of Lloyd Pearce, a realtor with 14 years' experience as a real estate appraiser. He described a 10-acre lake on the property and a dam which held water on some 35 to 40 acres thereof. He recognized that these lakes had a potential for fish farming. He considered that the highest and best use of the lands was for agricultural purposes with a potential for rural homesites and commercial fish farming. His opinion was that the fair market value of the whole tract was $52,400 and of the remaining lands, $35,300, leaving a difference of $17,100 or $5,100 more than the jury verdict.

Appellant's argument that Pearce's value testimony is not substantial is difficult to follow. He was the first witness called. Our attention is not directed to any objection to his testimony or the basis therefor made during the trial. Apparently appellant did not consider his testimony to be without any reasonable basis at the time it was given. As we interpret the argument, appellant contends that Pearce based his valuation of the Ormond land before the taking substantially on two sales, one of which was not comparable, and the other based on incorrect information, but ignored a sale which was comparable. It is also argued that there was no basis for his difference in values before and after the taking.

Pearce said that he used market data in making his appraisal. He used a sale of a tract by one Isley to Walls

on June 18, 1966. This was a 66-acre tract, and Pearce stated that he confirmed a sale price of $18,000, or $290 per acre, with the real estate man who handled the sale, but not with the seller or purchaser. Federal revenue stamps on the deed also indicated an $18,000 consideration. Appellant argues that Pearce was wrong because one of its witnesses, a highway department staff appraiser, testified that he confirmed this sale with the purchaser Walls and found that the consideration was $12,-000 or $182 per acre. It has been recognized that a value expert may rely upon hearsay in determining market values in the vicinity of the lands in question. *Arkansas State Highway Commission* v. *Russell*, 240 Ark. 21, 398 S. W. 2d 201.

It has never been recognized that one person who has firsthand knowledge of a real estate sale as a party is a source of information superior to another participant. Apparently, no one made any effort to contact the seller. An interesting question would be posed if he had given another witness still a third figure as the true consideration. The jury was not required to accept the version of either of the witnesses. Buyers and sellers of real estate are often reluctant to disclose true prices. A question of credibility and weight was presented for jury determination on this point, at least in the absence of direct and uncontradicted evidence on the subject.

Appellant contends that this sale and another could not be considered as comparable because the lands involved in those transactions fronted upon, or were near, Highway 64, while the property in question was accessible only by an unimproved dirt road, which may not have been used for some time, or by a permissive access to a county road which intersected with a dirt road from Highway 64, one-fourth to one-half mile away. The Ormond property was 1½ miles east of the city limits of Morrilton. Its characteristics were fully described by Pearce, Ormond, and by appellees' witness Hayes. No effort was made by appellant to show dissimilarity of

these tracts in any respect other than the means of access. We have said many times that no two tracts of land are identical and that reasonable latitude must be allowed in considering comparability of sales. *Arkansas State Highway Commission* v. *Duff,* 246 Ark. 922, 440 S. W. 2d 563; *Arkansas State Highway Commission* v. *Sargent,* 241 Ark. 783, 410 S. W. 2d 381; *Arkansas State Highway Commission* v. *Clark,* 247 Ark. 165, 444 S. W. 2d 702. We also have repeatedly said that there are many factors to be considered in determining comparability, but that reasonable resemblance is all that is required. *Arkansas State Highway Commission* v. *Witkowski,* 236 Ark. 66, 364 S. W. 2d 309; *Arkansas State Highway Commission* v. *McAlister,* 247 Ark. 757, 447 S. W. 2d 649. We cannot say that the one element of dissimilarity was sufficient to require that the sales, as a basis for opinion evidence, be held not comparable as a matter of law.

Appellant contends that Pearce should have considered the sale of a tract near the Ormond land to Nash by one Wallenjohn at $125 per acre just three months prior to the date of taking. Pearce admitted he did not investigate this sale. This tract may or may not have been comparable to the subject property. This failure on the part of Pearce was a matter to be considered by the jury in testing Pearce's credibility and weighing his testimony. It did not render his testimony insubstantial, as a matter of law.

Appellant's contention that there was no basis for Pearce's difference in values is premised largely upon the argument that he based his damages to the north residual of 92.62 acres upon the fact that it was left without any access after the taking. This position is not really justified, because Pearce also pointed out that the tract was severed into two separate and distinct tracts, with resulting alterations in size and shape, and with no means of communication between them. He did consider this north residual to be isolated, because he said, as did

both of appellant's witnesses, that while the south residual had the same means of access it always had, the north tract was left without any means of access because of the location of the highway right-of-way.

There were jury questions as to the potential use of the property and as to values. The highest and best use of a landowner's property is for the jury's determination. *Arkansas State Highway Commission* v. *Griffin*, 241 Ark. 1033, 411 S. W. 2d 495. We also held in *Griffin* that it is proper to allow evidence of all potential uses of a landowner's property. The fact that one is not an expert pertaining to some use to which the property may be put goes only to the weight to be given to his testimony. In *Ft. Smith & Van Buren Bridge Dist.* v. *Scott,* 103 Ark. 405, 147 S. W. 440, we said:

> "The sole question here was the market value of the land, and the witnesses gave their opinions as to that value, basing them on different facts and reasons in support thereof. It is true, some of them had no knowledge of the sale of lands under like conditions for bridge site purposes, nor information as to the prices realized at such sales, nor were they expert engineers, but all who testified were intelligent men, long familiar with the lands taken and the locality and neighborhood where they were situated, knew their value for some purpose, and in giving their opinion as to the most valuable purpose for which they were adapted and could be used, they stated their reasons for so doing. Their knowledge of the facts upon which their opinions were based and the reasons therefor and the value and weight thereof could have been and were 'readily and satisfactorily tested by cross-examination,' as said in *Railway* v. *Kirby,* 44 Ark. 106."

In that case we held that the question as to who was

competent to give an opinion is one which must be left largely to the discretion of the trial court. This further statement in that opinion is also applicable here:

"The jury were capable of and it was within their province to determine the weight that should be accorded to the opinions of the witnesses, and we do not think there was any abuse of the discretion of the trial court in permitting the estimates of the witnesses and the reasons therefor submitted to the jury, or that any prejudicial error was committed in the introduction of the testimony."

The case most nearly similar to this is *Little Rock & Fort Smith Railway* v. *McGehee*, 41 Ark. 202. The court faced the question as to whether there was support for the actual amount of the damages. The property involved fronted on the river for a quarter of a mile and consisted of a rock bluff entirely unfit for cultivation or human habitation. The estimate of damages on behalf of the landowner was based upon the susceptibility of the property for use as a ferry landing. No ferry had ever been established or operated on the land and no license had been granted by the county court for such a ferry. It was said to be an eligible site by reason of the deep water at that point. The land was less than one mile distant from a licensed ferry at Van Buren which had been in operation since territorial times, but which was said to labor under disadvantages. There was no public highway reaching any point in the land, but it was shown that one could be constructed from Van Buren or Fayetteville at a moderate expense. The tract consisted of 76 acres, only three or four of which were actually taken. The evidence showed that the landowner had destined the land for this use and had once leased it with the condition that the lessee obtain a license and establish a ferry or surrender the premises. No other use for the property was suggested. The condemnor had moved to exclude all evidence relating to the feasibility of establishing a ferry from the land-

owner's property to the opposite bank of the river. The court said that although no ferry may have ever been established there it was possible and maybe probable that a change of circumstances or the development of the country might require one in the near future. It was held that the jury had not placed an exaggerated estimate upon the injury inflicted upon the owner's tract of land.

We have always held that a jury verdict will not be disturbed if there is any substantial evidence to support it. *Arkansas State Highway Commission* v. *Sargent*, 241 Ark. 783, 410 S. W. 2d 381; *Arkansas State Highway Commission* v. *Jelks*, 203 Ark. 878, 159 S. W. 2d 465. To do otherwise would invade the province of the jury. *Washington County* v. *Day*, 196 Ark. 147, 116 S. W. 2d 1051.

Here the Ormond value testimony was manifestly not prejudicial, and obviously disregarded by the jury. The verdict was only a fraction of the damages he stated. It was substantially less than Pearce's assessment. We have heretofore entered remittiturs when the owner's value testimony was without reasonable basis down to the amount that was shown by his other value witnesses. See *City of Harrison* v. *Moss*, 213 Ark. 721, 212 S. W. 2d 334. The logic applied in such cases requires affirmance of this judgment, where the error obviously did not enhance the award and the verdict is less than the amount for which there is substantial evidentiary support.

GEORGE ROSE SMITH, JONES and BYRD, JJ., dissent.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion. The Ormond land originally consisted of 262 acres. The taking of 11.01 acres for right-of-way left 92.62 acres on the north side of the right-of-way, and 158.37 acres on the south side. Mr. Ormond testified that his damage amounted to $84,874 on a before value of $102,874, and an after value of $17,240

because of loss in access to a part of it. His only expert witness testified that the total damages amounted to $17,000. Two expert witnesses for the Commission testified that the damages amounted to $4,150 and $4,500 respectively. Judgment was entered on a jury verdict for $12,000 and on appeal to this court the Commission relies on the following points for reversal:

> "The trial court erred in refusing to strike that portion of Charles L. Ormond's value testimony relating to values based on commercial catfish farming.
>
> The verdict was excessive in that there was no substantial evidence to support a verdict of $12,-000.00."

I agree with the appellant on both points.

Mr. Ormond purchased his land in about 1961, apparently at public sale, for about $11,000. Mr. Ormond testified that he had planned to raise catfish on his land and that its highest and best use is for catfish farming. He testified that water could be, and was being, impounded by a levee on 60 acres of the land and that before the taking this land was worth $1,520.40 per acre or a total of $91,224 for catfish farming. He testified that it would cost about $10,000 to put the land in shape for catfish farming, leaving a net before value of the 60 acres at $86,224.

On cross-examination Mr. Ormond testified that he used the income approach in establishing the value of his land. He says his lake would be 20 feet deep in some areas and that an acre of water four feet deep will support 2,000 catfish, and that under normal conditions he would be able to get 1,800 of them to market at one year of age; that two pounds of feed will produce one pound of catfish, and that feed costs $2.50 a sack. He testified that his annual net income from one acre of cat-

fish would be $304.80 per acre, but that he would give a tenant half of this amount and as landlord he would net $152.04 a year per acre in catfish farming. He multiplied this amount by ten years in arriving at $1,520.40 as the value of his land per acre. At the close of Ormond's testimony the record reveals as follows:

"MR. BROCK: At this time the plaintiff would move to strike the value testimony of the witness Ormond relating to the value placed on the land that is suitable for commercial catfish farming, on the basis that this value is based upon anticipated future profits and would be of a highly speculative nature, on which he is basing his value; and for this reason we move that that testimony with reference to the commercial fish farming and values based on that use be stricken.

MR. ROWELL: In response to the motion, counsel for the landowner asserts that the opinions as to the before value was based upon the adaptability of the land at the time of taking, that on cross-examination counsel for the Highway Department interrogated the landowner with reference to why the land was adaptable and as to why it had such a value; that in response the landowner set forth the rental value of the property with reference to farming, which is an acceptable method of ascertaining market value, having nothing to do with speculation or conjecture with reference to the adaptability of the land.

THE COURT: The court will let *the whole thing go to the jury for whatever it is worth.*" (Emphasis mine).

The majority agree that this testimony should have been stricken.

Mr. Pearce testified on direct examination that prior to the taking the highest and best use was one of

an agricultural nature, primarily pasture land, *with a potential for commercial fish farming* and a future potential for rural homesites, provided adequate and suitable access was available to the property. He testified that after the taking the highest and best use of the residual on the south side remains the same as before the taking with the same potential use and value that it had before the taking. He tesitfied that the parcel remaining on the north side of the right-of-way, being without access and partially flooded, its highest and best use after the taking would be flooded timberland. It was Mr. Pearce's opinion that the value of the 11.01 acres actually taken amounted to $2,250, and the damages to the remainder amounted to $14,850, giving a total of $17,000 for the land taken and damage to the remainder.

On cross-examination, as to access, Mr. Pearce testified in part as follows:

"Q. The real route from Plumerville, though, isn't it this north route that comes into the property on the north side of the property, is that right?

A. Yes, sir, but that road has not been used, as far as I could tell, in a good while up to this property. Now—

Q. Yes, sir. It's grown up and it's hard to see.

A. Yes, sir.

Q. You haven't been down it?

A. I havn't been down there, no, sir. I've been down it a ways, as far as it was graded out, but I haven't been on to this property from that road.

Q. This was—the road from Plumerville was one

of the access routes to this property that you were talking about?

A.   Yes, sir, that was one of them, yes, sir.

Q.   Now, do you also know of another access route that wouldn't even show on this property perhaps, up across the land of Earl Smith?

A.   There is a road. I don't know the name. It comes in along here—

Q.   Would that be south?

A.   It might be. I haven't been over that road either. I haven't tried that either—I don't know the owner's name. That comes in here.

Q.   Would it be further south?

A.   I don't know about tnat. It comes on the southern portion of the property.''

As to use and value on cross-examination, Mr. Pearce testified:

''Q.   The highest and best use of the property was agricultural purposes?

A.   Yes, sir.

Q.   For pasture land?

A.   *That plus any potential, as I said, for commercial fish farming and the lakes.*

Q.   Now, you say fish farming in the lake to the south, on the south residual?

A. And the one—The lake that had been formed on the north residual prior to the taking.

Q. This is a basis of the $200.00 per acre value?

A. Yes, sir. As I say, there was a potential for—future potential—for rural home sites, provided adequate access to the property were available, which at this time I do not consider the access is adequate. * * *

Q. Well, this open pasture land would be better than that ridgy woodland, wouldn't it?

A. Mr. Brock, for its particular use, uses, but then those lakes, as I say, *have a potential for fish farming which could also be considered a valuable use.*

Q. But your highest and best use on this property is for agricultural purposes?

A. That's right, *and I consider fish farming as an agricultural purpose, along with pasture land.*

Q. There hasn't been any fish farming done on this property, had there?

A. Not on this property, but there's some just north of Plumerville out here that—

Q. There is a potential for it?

A. It's a use to which the land can be devoted.

Q. Like residential?

A. As I say, that is future potential in the residential development, and that relies strongly

on adequate access to the property. The ponds on this particular land could be utilized for the purpose which I mentioned immediately."

(Emphasis mine)

It is my opinion that Mr. Pearce's testimony as to potential value for catfish farming should have been stricken. It is my further opinion that without the potential fish farming value, there was no substantial evidence to support the verdict for $12,000.

As to his market value approach, Mr. Pearce testified:

"Q. Now, this $200.00 per acre, what approach to value did you use? Did you use the market data approach?

A. Yes, sir.

Q. Does this include sales of other lands in this vicinity?

A. That's correct.

Q. What sales did you use to arrive at this $200.00 per acre value?

A. I used the sale of Isley to Walls, one which was a 66 acre tract south of Highway 64 a mile and a half east of Morrilton."

Mr. Pearce testified that the Isley to Walls sale was for $290 per acre as indicated by revenue stamps on the deed and as confirmed by the real estate agent who closed the deal, and that there was public access to this property. One other sale used by Mr. Pearce was a 40 acre tract fronting on Highway 64 some five miles east of the Ormond property. He testified that this property sold for $7,000 or $175 per acre. Mr. Pearce testified

to two other sales, one in 1963 for $132 per acre, but none in the vicinity of the Ormond property. The sale of an 80 acre tract near the Ormond property for $175 per acre was not considered an arms-length transaction by Mr. Pearce, and property near the Ormond land, purchased by a Mr. Wingo for $50 per acre, was considered a bargain by Mr. Pearce and not representative of market value. Mr. Pearce was asked concerning other specific sales in the vicinity of the Ormond property, but he disclaimed any knowledge concerning these sales.

All of Mr. Pearce's testimony as to severance damage pertained to the 92.62 acres north of the right-of-way which he says had a market value of $200 per acre as pasture and a potential fish farm before the taking, but which has now been reduced to flooded timberland worth only $40 per acre because of loss of access.

"Q. Now, on this south 150.87 acres, what did you consider the value of that to be afterwards?

A. $200.00 per acre.

Q. In other words, you didn't feel it was damaged in any way?

A. No, sir, it has been slightly altered in shape, but I didn't consider that it had been damaged.

Q. Now, as to the 92 acres north of the new Interstate, 92.62—A

A. Yes, sir.

Q. What after value did you place on that?

A. $40.00 per acre.

Q. $40.00 per acre? And what was the reason it was only worth $40.00 an acre again?

A. It is an isolated tract and doesn't have access. The highest and best use for the land after the taking a portion of the land is flooded. It would be flooded timber land. Some of it is flooded, and some of it was not flooded.

Q. So you damaged the 92 acres north of the Interstate $160.00 per acre?

A. Yes, sir.

Q. Because it had no access.

A. Yes, sir.''

Mr. Pearce testified on cross-examination that there were two access roads into the property; that one of them had grown up and was hard to see, and that he had not attempted to go to the property over either road.

Neither Mr. Ormond nor Mr. Pearce qualified as experts on fish farming and their testimony as to value and damage on such potential use was without logical basis. Mr. Ormond built a dam which impounded the water on the north 92.62 acres of his land and it was this act rather than the taking of the right-of-way that reduced this acreage to flooded timberland, as testified by Mr. Pearce. According to Mr. Pearce this 92.62 acres of land north of the right-of-way was damaged by the right-of-way taking in an amount greater than what appears to have been the market price of the entire 262 acre tract when Ormond purchased it in 1961.

Both Mr. Ormond and his expert witness placed considerable emphasis on the value of the land as a potential fish farm, and this evidence went to the jury for what it was worth. There is no way of determining what the value testimony for potential fish farming was worth to the jury in arriving at its verdict. I consider

this testimony worth a great deal to the jury in arriving at its verdict, for I simply find no substantial evidence of severance damage to Ormond's property which would sustain a verdict in an amount anywhere near $12,000.

I would reverse and remand for a new trial.